## Morning Call Inc. v. Board of School Directors of Southern Lehigh School District

*Malcolm J. Gross,* for plaintiffs.
*Andrew E. Faust,* for defendants.

WALLITSCH, *J.,* April 19, 1993—The plaintiffs, The Morning Call Inc., and Elliott Grossman, a reporter for *The Morning Call,* brought this action for declaratory judgment against the defendants, the Board of School Directors of the Southern Lehigh School District and its individual members. The complaint seeks a judicial declaration that the board violated the Sunshine Act, Act of July 3, 1986, P.L. 388, no. 884, as amended, 65 P.S. §278, by the alleged elimination of two of five finalists for the position of the district's superintendent at a closed board meeting on February 27, 1992. The plaintiffs and the defendants have filed cross motions for summary judgment which are before this court for decision.

The facts are not materially disputed. In October 1991, the superintendent of the district announced his resignation effective June 1992. The board, at a public meeting, voted to use the services of a consultant to aid the board in its selection process. The first step in this process began by the consultant advertising the superintendent position and screening the candidates who applied, reducing the number to six candidates who would be interviewed by the board. Noteworthy is the fact that one of these six candidates then withdrew his name before the interview because of the concern that his candidacy would become public and have a negative impact on his current employment.

The board met in executive session on February 22 and 27, 1992, to interview these remaining five candidates and discuss the hiring of a new superintendent, the public being notified of this process. On February 22, 1992,

the board interviewed four of the finalists. On February 27, at the second non-public executive session, it interviewed the last finalist and then further discussed the candidates. The briefs of the parties place their respective "spin" on the process used in that executive session. However, it is clear that the purpose was to further reduce the candidates to three, whose names were then to be made public. The plaintiffs call this process "official action" which violated the Sunshine Act. The defendants argue that a decision was made "to move three candidates forward, although no one was eliminated," which was not violative of the act but which was proper procedure in executive session.

After this executive session on February 27, the names of the three "finalists" were made public and a public session was held for citizens to appear and have dialogue with these three candidates. On March 11, 1992, the board held another executive session at which the board further narrowed the candidates to one. Interestingly, this board action is not being attacked by the plaintiffs. Further investigation of this candidate was then done and on March 23, 1992, the proposed employment contract for the candidate was discussed in executive session. Thereafter, at a public meeting on April 16, 1992, the board voted to appoint the leading candidate and to approve the employment contract.

The granting of summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Muller v. Borough of Parkesburg,* 132 Pa. Commw. 321, 572 A.2d 859 (1990). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and any doubts are to be resolved against the entry of summary

judgment. *Husak v. Berkel Inc.,* 234 Pa. Super. 452, 341 A.2d 174 (1975).

In response to plaintiffs' motion for summary judgment, defendants raise a number of contentions. First, defendants claim that the plaintiffs lack standing to bring this action. We disagree. Under the recent case of *Press-Enterprise Inc. v. Benton Area School District,* 146 Pa. Commw. 203, 604 A.2d 1221 (1992), the plaintiffs have standing. Secondly, since the plaintiffs do not seek to have the board's action in reducing the number of candidates from five to three voided, this action is not invalidated by not joining the eliminated candidates. However, for the remaining reasons set forth below, we grant defendants' motion for summary judgment and deny plaintiffs' motion for summary judgment.

The threshold question which must be addressed, apparently for the first time in the Commonwealth of Pennsylvania, is to what extent the process of hiring public employees is subject to the Sunshine Act. The plaintiffs argue that the board's actions on February 27, 1992, were "official actions" under section 4 of the Sunshine Act, 65 P.S. §274, and were therefore required to be taken at a public meeting.[1] The defendants argue that the selection process employed by the board, including the February 27 meeting, falls within section 8 of the Act, 65 P.S. §278, which permits appointment/employment matters to be dealt with in executive session.[2]

---

1. Section 4 of the Act states:

"Official action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 7, 8 or 12."

2. Section 8 of the Act provides, in pertinent part, as follows:

"An agency may hold an executive session ... [t]o discuss any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of per-

The purpose of the Sunshine Act is to promote the concept that the public's business is everyone's business. However, the Legislature of this Commonwealth wisely attempted to balance the rights of the public to be informed about "its" business with the needs of the public bodies to do "their" business. For that reason, exceptions were carved out of the general declaration of public policy that citizens have the right to attend most meetings where the public business is discussed. A reading of sections 4 and 8 of the Sunshine Act requires that all "official action *and deliberations* by a quorum of the members ... shall take place at a meeting open to the public unless closed under section 8...." Section 8 allows the discussion of employment matters to occur in private executive session subject only to the limitation in subsection (c) that any "official actions" on those discussions must be done at an open meeting. The Legislature thereby specifically eliminated the need for *deliberations* on matters affecting employment matters from being done at a public meeting.

Turning now to the case at bar, we hold that if the actions of the board on February 27, 1992, were merely

formance, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the agency, or former public officer or employee, provided, however, that the individual employees or appointees whose rights could be adversely affected may request, in writing, that the matter or matters be discussed at an open meeting. The agency's decision to discuss such matters in executive session shall not serve to adversely affect the due process rights granted by law, including those granted by Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure)....

"(c) Limitation. Official action on discussions held pursuant to subsection (a) shall be taken at an open meeting. Nothing in this section or section 7 shall be construed to require that any meeting be closed to the public, nor shall any executive session be used as subterfuge to defeat the purposes of section 4.65 P.S. §278."

"deliberations" or "discussions" (as defendants argue) rather than "official action," (as plaintiffs argue) there was no violation of the Sunshine Act. "Official action" is defined in section 3 of the Sunshine Act, 65 P.S. §273, as:

"(1) Recommendations made by an agency pursuant to statute, ordinance or executive order.

"(2) The establishment of policy by an agency.

"(3) The decisions on agency business made by an agency.

"(4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order."

Plaintiffs contend that the process culminating in the reduction of the number of candidates from five to three who would thereafter be subject to further interviews, meetings, and visits to their home districts was "official action" under the Act. Specifically, they argue that the testimony of William Herring, president of the board, establishes that a "vote" was taken under subsection (4) above, thereby creating "official action" that, under section 4 or 8(c) of the Act, had to occur at an open meeting. We disagree. The problem with this contention is that it focuses on Mr. Henning's choice of the word "vote" and ignores the process which was occurring. The board was engaged in a winnowing process, beginning with the selection of a consultant to aid the board. The consultant himself narrowed the field to six candidates. The board then interviewed the remaining candidates and discussed their relative strengths and weaknesses. The "vote" was really nothing more than a further rating and ranking of these non-finalists.

Plaintiffs' position would require all public officials of the Commonwealth to reveal their preliminary choices

among a number of candidates when all that was being accomplished was reaching a consensus about a number of finalists who would then be subject to public scrutiny. This was clearly not the intent of the Legislature as the legislative history of the 1975 Sunshine Act reveals. During the debate on that Act, it was appropriately stated that: "There are time[s] when ... there needs to be confidentiality, and it is the intent of the [Act] ... to permit the confidentiality of an executive session that is necessary, but not to use an executive session to abuse the public or to run and to hide."[3]

It is difficult to think of a greater need for the confidentiality of an executive session than when numerous candidates, many or all of whom hold positions with other employers, are rated and ranked. To expose all potential candidates, rather than merely the finalists who perhaps take the risk of public exposure, would be a serious obstacle for governmental bodies to attract candidates. An example was seen in this case, where one of the six candidates, knowing of the plaintiffs' attempts to secure additional publicity on the process, withdrew his name from consideration. We cannot believe that the Legislature would have intended such an absurd and damaging result as is being urged by the plaintiffs in this lawsuit.

The Pennsylvania Supreme Court has held that the (former) Sunshine Law requires openness for the policy-making decisions of governmental agencies in "clear distinction" to the confidentiality that is permitted for "decisions about the character and competence of individuals." *Consumers Education and Protective Assn. v. Nolan,* 470 Pa. 372, 389, 368 A.2d 675, 684 (1977). This holding supports the need to protect the process used by the board in the present case.

---

3. 1973 Pa. H.R.J. 1841 (remark of Representative Knepper).

Plaintiffs cite a recent Michigan case, *Booth Newspaper v. University of Michigan,* 481 N.W.2d 778 (1992), to support their position. In that case, the plaintiff brought an action under the Michigan Open Meetings Act, M.C.L. 15.261, et seq., seeking judicial relief against the procedures used by the University's Board of Requests in selecting the president of the University of Michigan. The Michigan Court of Appeals found that there were violations of the Act but those violations are not germane to the present case since the scope of that Act, as well as the fact scenario, is different than presented here.

Nor did the defendants "use the executive session to abuse the public or to run and hide." When they had narrowed the field of candidates to three, although none were eliminated from further consideration if necessary, the board released the names of the three finalists, invited the public to open sessions with these candidates, and publicly voted to appoint the leading candidate and to approve the employment contract. The intent of the Sunshine Act, to reasonably provide public access to governmental processes while maintaining reasonably necessary confidentiality in the preliminary stages of the employment process, was met by the defendants' actions. We therefore find in favor of the defendants.

## ORDER

Now, April 19, 1993, upon consideration of plaintiffs' motion for summary judgment, and defendants' cross-motion for summary judgment, the written briefs and oral argument of counsel, and for the reasons expressed in the accompanying opinion, it is ordered that plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted.