604 A.2d 1221

**PRESS–ENTERPRISE, INC., Appellant,**

v.

**BENTON AREA SCHOOL DISTRICT
and George Miller, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Dec. 19, 1991.

Decided March 4, 1992.

204

Alvin J. Luschas, for appellant.

Robert W. Waeger, for appellees.

John C. Sullivan, for amicus curiae, Pennsylvania Newspapers Publishers' Ass'n.

Before CRAIG, President Judge, McGINLEY, Judge (P.), and BARBIERI, Senior Judge.

CRAIG, President Judge.

Press–Enterprise, Inc. appeals from a decision of the Court of Common Pleas of Columbia County sustaining the appellees' preliminary objections in the nature of a demurrer because Press–Enterprise, Inc. allegedly lacks standing in this case. We reverse and remand for future proceedings, to reach the merits.

The issue is whether a publisher of a newspaper has standing to bring an action against a school district for alleged violations of the Sunshine Act.[1]

The facts in this case are as follows. Press–Enterprise is a newspaper publisher and Pennsylvania corporation. On September 17, 1990, the Benton Area School Board, appellee, convened to fill a vacancy on its board. The school board interviewed prospective candidates privately, refusing the request of the Press–Enterprise representative to be present at these interviews. After the private interviews, the board held a public meeting where members of the board cast secret ballots to fill the vacancy. The secretary then announced that a candidate named George Miller, also

1. Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

an appellee here, won the appointment. Miller received five votes, while other prospective candidates received three votes. The board refused Press–Enterprise representative's request that the school district inform the press and public how each director voted on the issue.

On October 15, 1990, the board, by a unanimous roll call vote, ratified and confirmed the September 17 selection of Miller. Press–Enterprise filed a complaint in declaratory judgement and quo warranto in the common pleas court seeking to declare the vacancy vote unlawful and George Miller's appointment a nullity and to remove him from office. Press–Enterprise alleged violations of the Pennsylvania Sunshine Act and the Public School Code of 1949.[2] The school district filed preliminary objections in the nature of a demurrer, a petition raising a question of jurisdiction and a motion to strike.

On February 19, 1991, the trial court granted the school district's preliminary objections in the nature of a demurrer and dismissed Press–Enterprise's complaint without leave to amend stating that Press–Enterprise lacked standing to bring this action.

Press–Enterprise now appeals to this court, seeking to overturn the trial court's dismissal of its action.

 The trial court relied upon the traditional test for standing as set forth in *William Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). The *William Penn* case stated that a party must (a) have a substantial interest in the subject matter of the litigation, (b) the interest must be direct and (c) the interest must be immediate and not a remote consequence. A substantial interest is one where there is a "discernible adverse effect to some interest other than the abstract interest of all citizens." *William Penn Parking Garage*, 464 Pa. at 195, 346 A.2d at 282. Further, the requirement that the interest be immediate and not remote or speculative involves "the

2. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—26–2606–B.

nature of the causal connection between the action complained of and the injury to the person challenging it." *Id.,* 464 Pa. at 173, 346 A.2d at 283.

The trial court stated that Press–Enterprise's interest in the litigation was "nothing more than the abstract interest of all citizens in preventing alleged unlawful activities by governmental bodies."

■ However, Press–Enterprise argues, and we agree, that the traditional test for standing is not applicable to this case. This court, in *In re Barlip,* 59 Pa.Commonwealth Ct. 178, 428 A.2d 1058 (1981), stated that traditional standing requirements are applicable only where a specific statutory provision for standing is lacking.

■ Because Press–Enterprise alleges violations of the Sunshine Act, and § 15 of that Act (65 P.S. § 285) contains a specific provision for standing, this section applies to the present case. Section 15 states:

**Jurisdiction and venue of judicial proceedings**

The Commonwealth Court shall have original jurisdiction of actions involving State agencies and the courts of common pleas shall have original jurisdiction or actions involving other agencies to render declaratory judgments or to enforce this act, by injunction or other remedy deemed appropriate by the court. *The action may be brought by any person* where the agency whose act is complained of is located or where the act complained of occurred. (Emphasis added.)

■ The word "person"—according to the express definition of that term by the Pennsylvania Statutory Construction Act of 1971, 1 Pa.C.S. § 1991,—includes a corporation, such as the appellant here. Section 15 of the Sunshine Act is unambiguous. It grants standing to "any person" and places venue either (1) where the agency is located or (2) where the act occurred.

The venue clauses clearly convey "where" the "action may be brought." They do not modify "person" because, if

they did, they would express some relationship of "person" to place, such as residing or doing business, etc.

Press–Enterprise also cites *Consumers Education and Protective Assoc. v. Nolan*, 470 Pa. 372, 368 A.2d 675 (1977), for the proposition that traditional standing principles are not applicable to this case.

In *Consumers*, the governor appointed Dr. Herbert Denenberg to serve as a commissioner on the P.U.C. at a time when the state Senate was not in session. On the date the governor appointed Dr. Denenberg, the Senate Rules and Executive Nominating Committee met and voted to refer the appointment to the Senate floor for a confirmation vote. The next day the Senate voted, and Dr. Denenberg did not receive the required two-thirds majority vote.

The Consumers Education and Protection Association (CEPA), an organization of several hundred low income residents and taxpayers of Pennsylvania with branches in Philadelphia and Delaware County, filed a complaint in equity in our court against a state senator, the lieutenant governor and the chairman of the Public Utility Commission. CEPA alleged that Dr. Denenberg's appointment was illegal and invalid under the Open Meeting Law [3] because the Senate did not give the public notice of the meeting where the committee appointed Dr. Denenberg and no minutes of the meeting were taken.

CEPA challenged this action because it believed that the Senate's confirmation vote was unfairly and purposely rushed to the Senate floor to invalidate Dr. Denenberg's appointment. CEPA alleged that Dr. Denenberg was a consumer advocate and that his exclusion from office would

3. Act of July 19, 1974, P.L. 486, repealed by the Act of July 3, 1986, P.L. 388. Although the Sunshine Act repealed the Open Meeting Law, the Sunshine Act incorporated the exact language of § 9, the standing provision of the Open Meeting Law, into § 15, the standing provision found in the Sunshine Act. Because the Pa. Statutory Construction Act states: "[W]hen a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language," 1 Pa.C.S. § 1922(4), *Consumers* is applicable to this case.

adversely affect CEPA's members in the form of higher utility bills. This court sustained the defendants' preliminary objections to CEPA's complaint on grounds other than standing. On appeal, our Supreme Court held that CEPA had standing to bring the action in question. The Supreme Court stated:

> [W]e do conclude that section 9 of the Act, 65 P.S. § 269, which provides in pertinent part that '[t]he Commonwealth Court shall have original jurisdiction of actions involving State agencies ... to render declaratory judgments or to enforce this act, by injunction or other remedy deemed appropriate by the court,' and that '[t]he action may be brought by any person' is inclusive enough to give appellants standing to bring the action and equity jurisdiction to hear it.

*Consumers,* 470 Pa. at 381, 382, 368 A.2d at 680.

Press–Enterprise thus submits that the plain meaning of § 15 is that any person may bring an action under the Sunshine Law.

Nevertheless, the school district contends that the *Consumers* case demonstrates that the Supreme Court did not abandon traditional standing principles, because CEPA had a pecuniary stake (albeit speculative) in the outcome of the case and that this fact influenced the Supreme Court.

However, the Supreme Court did not base its decision on traditional standing principles because the Supreme Court stated only that § 9 of the Open Meeting Law was inclusive enough to give CEPA standing to bring its action. The Supreme Court never explicitly referred to traditional standing principles in its opinion.

Thus, we believe Press–Enterprise has standing based upon the plain language of § 15 of the Sunshine Act.

■ Furthermore, even if traditional standing principles were applicable to this case, we believe Press–Enterprise would have standing. As stated previously, a plaintiff must have a substantial, direct and immediate interest in the outcome of the litigation.

The substantial interest of Press–Enterprise in this case stems from the purpose of the Sunshine Act and the press's role in our society. The purpose of the Sunshine Act is to give citizens the opportunity to observe the decision-making process of public agencies. § 2 of the Act, 65 P.S. § 272. The role of the press is to disseminate information; if that information is withheld from the press, many concerned citizens who do not attend public meetings would have no way of informing themselves of their government's activities and the purpose of the statute would be subverted. Thus, the press's interest in this case is different from that of the average citizen because the average citizen does not bear the news media's responsibility of informing the public.

Thus, even under traditional standing principles as stated in *William Penn Parking*, Press–Enterprise would have standing because of the media's unique role and interest in observing government activity in our democracy.

Accordingly, we reverse the trial court and remand the case for further proceedings, to reach the merits.

### ORDER

NOW, March 4, 1992, the decision of the Court of Common Pleas of Columbia County, No. 1194 of 1990, dated February 19, 1991, is reversed and the case is remanded for further proceedings, including pleadings, to reach and decide the merits. Jurisdiction relinquished.