**PG PUBLISHING COMPANY, INC.**
**d/b/a The Pittsburgh Post–**
**Gazette, Petitioner,**

v.

**GOVERNOR'S OFFICE OF ADMINIS-**
**TRATION and The Pennsylvania De-**
**partment of Education, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 18, 2015.
Decided July 9, 2015.

Frederick N. Frank, Pittsburgh, for petitioner and intervenors PA Media Group d/b/a The Patriot–News and PennLive, Texas–New Mexico Newspapers Partnership and LNP Media Group, Inc.

Jullia A. Sheridan, Chief Counsel, Harrisburg, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge (P.), and P. KEVIN BROBSON, Judge.

OPINION BY President Judge DAN PELLEGRINI.

The Governor's Office of Administration (GOA) and the Pennsylvania Department of Education (PDE) filed preliminary objections to PG Publishing Company, Inc. d/b/a The Pittsburgh Post–Gazette (PG Publishing)'s amended petition for review. For the reasons that follow, we sustain the GOA and PDE's demurrers and dismiss PG Publishing's amended petition for review with prejudice.

## I.

■■■■ PG Publishing[1] filed an amended petition for review in the nature of a complaint in mandamus (amended PFR)[2] challenging the GOA's and PDE's email-retention policies under the Right–to–Know Law (RTKL)[3] and Section 701($l$) of the Administrative Code of 1929 (Administrative Code).[4] According to PG Publishing, an e-mail retention policy established by GOA and followed by the Commonwealth's executive-branch agencies, including PDE, affords each employee discretion to determine whether an e-mail constitutes a "public record"[5] that should be saved under the RTKL or if it may be deleted as a

---

1. The amended petition for review was filed on November 5, 2014, 15 days after the Court granted the petitions to intervene filed by PA Media Group d/b/a The Patriot–News and PennLive and Texas–New Mexico Newspapers Partnership, and 14 days after the Court granted the petition to intervene filed by LNP Media Group, Inc. Nonetheless, none of the intervenors were identified as party-participants in the amended petition for review.

2. As our Supreme Court explained:

 "The writ of mandamus exists to compel official performance of a ministerial act or mandatory duty. Mandamus cannot issue to compel performance of a discretionary act or to govern the manner of performing [the] required act. This Court may issue a writ of mandamus where the petitioners have a clear legal right, the responding public official has a corresponding duty, and no other adequate and appropriate remedy at law exists. Moreover mandamus is proper to compel the performance of official duties whose scope is defined as a result of the mandamus action litigation. Thus we have held that mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law."

 *Brown v. Levy*, 621 Pa. 1, 73 A.3d 514, 516 n. 2 (2013) (internal quotations and citations omitted) (alteration in original).

3. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101—67.3104.

4. Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 241($l$). Section 701($l$) of the Administrative Code authorizes the Governor to "prescribe the filing system to be adopted by each department, board and commission; to direct, with the approval of the Executive Board, what records shall be destroyed and what records preserved by photographic process, and to assign space in the Capitol Buildings, or in leased quarters for conduct of work and for storage of records." 71 P.S. § 241($l$).

5. Section 102 of the RTKL defines a "[r]ecord" as:

 Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The

"transitory" or "non-record." [6] (Am. PFR ¶¶ 5, 38.)

According to PG Publishing, if an employee determines that an e-mail has no value as a "public record" under the RTKL, it is deleted from the employee's inbox and five days later is permanently deleted from the executive agency's server, with no possibility of recovery. (*Id.* ¶¶ 6–

term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.
65 P.S. § 67.102. Further, it defines a "[p]ublic record" as a Commonwealth or local agency record that is not exempt from disclosure or otherwise protected by privilege. *Id.* Under Section 305(a) of the RTKL, records in the possession of Commonwealth agencies are generally presumed to be public records, subject to certain enumerated exceptions. 65 P.S. § 67.305(a).

6. Pursuant to the Governor's authority under Section 701(*l*) of the Administrative Code, 71 P.S. § 241(*l*), the Governor's Office has approved the following four documents implementing its record-retention policy: (1) Management Directive 210.5, as amended; (2) Manual 201.1, as amended; (3) Manual 210.7, as amended; and (4) Manual 210.9, as amended. (Am. PFR ¶ 61.) Amended Manual 210.9 contains definitions and a key with six disposal codes regarding how each type of internal document should be disposed. (Am. PFR ¶ 63; Am. PFR, Ex. B, at 1–2.)

Section 2 of the GOA's Manual 210.9 Amended defines "transitory records" as:
Records that have little or no documentary or evidential value and that need not to [*sic*] be set aside for future use; have short term administrative, legal or fiscal value and should be disposed of once that administrative, legal or fiscal use has expired; or are only useful for a short period of time, perhaps to ensure that a task is completed or to help prepare a final product....
(Am. PFR, Ex. B, at 5.) Its definition of "record" is virtually identical to the definition provided under the RTKL. *Compare* Section 102 of the RTKL, 65 P.S. § 67.102, *with* Section 2 of the GOA's Manual 210.9 Amended (Am. PFR, Ex. B, at 4) ("Information, regard-

7.) To this extent, Chapter 9, Section 10 of the State Records Management Manual (M 210.7) provides:

E-mail messages and attachments received or sent (incoming or outgoing) that meet the definition of records must be retained and disposed of in accordance with agency-specific ·and/or general retention and disposition schedules

less of physical form or characteristic, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes documents, papers, letters, maps, books, tapes, photographs, film or sound recordings, information stored or maintained electronically, and data- or image-processed documents.").

Finally, the GOA's Manual 210.9 Amended defines "[n]on-[r]ecords" as:
Information that does not meet the definition of a record. These materials relate to non-state government business or activities and may include items such as announcements of community events and personal e-mails. Non-records may also include publications such as trade journals, pamphlets, and reference materials received from outside organizations, conferences, and workshops. Non-records may be disposed of at the convenience of the agency when they have no more value or use to the agency. The following are examples of non-records:
• blank forms, publications, etc., which are outdated or superseded;
• preliminary drafts of letters, reports, and memoranda which do not represent significant basic steps in preparation of record documents;
• shorthand notes, stenography tapes, mechanical recordings which have since been transcribed, except where noted on the Agency–Specific Records Retention and Disposition Schedule;
• routing and other interdepartmental forms which do not add any significant material to the activity concerned; and
• form and guide letters, sample letters, form paragraphs, vendor product information packets and brochures.
Section 2 the GOA's Manual 210.9 Amended (Am. PFR, Ex. B, at 4.)

approved by the Executive Board. E-mail messages, in and of themselves, are not a single record series. Retention periods will vary depending upon the function and content of the individual message. E-mail messages and attachments that meet the definition of records must meet the retention requirements for the same type of record (record series) as listed on an approved records schedule. For example, if the E-mail message constitutes correspondence relating to a specific program activity, it would be retained for the same length of time as other records in that series.

According to *Management Directive 210.13,* E-mail messages and attachments that do not meet the definition of records and are not subject to litigation or other legal proceedings should be deleted immediately....

State Records Management Manual (M 210.7), Chapter 9–10 (Am. PFR, Ex. A, at 9–10.)

By way of example, PG Publishing notes that it filed a RTKL request with PDE seeking correspondence pertaining to Mr. Tomalis's work as a special advisor on higher-education issues, in response to which only five e-mails sent by Mr. Tomalis were provided. (Am. PFR ¶ 40.) During a subsequent interview, then-Acting Secretary of Education, Carolyn Dumaresq, indicated that she may have saved additional e-mails sent to her by Mr. Tomalis. (*Id.* ¶ 42.) When questioned as to why those e-mails were not provided in response to the request, Secretary Dumaresq's spokesman, Tim Eller, stated that only Mr. Tomalis's e-mail inbox was searched, and then-Acting Secretary Dumaresq stated that Mr. Tomalis likely deleted the e-mails because he no longer needed them. (*Id.* ¶¶ 41, 43.) In this way, PG Publishing further alleged that the dis-

cretion provided to PDE employees in classifying documents and, therefore, determining the disposal schedule to which they are subject does not conform to the system established by GOA, as evidenced by the fact that two employees disagreed over their classification. (*Id.* ¶¶ 60–70.)

PG Publishing asserts that the subject e-mail retention policies vitiate the public's rights under the RTKL because they enable the GOA and PDE to destroy e-mails that could be the subject of litigation under the RTKL without recourse in the event that the OOR or courts ultimately determine that an agency has not satisfied its burden in proving that a requested e-mail is not a public record. (*Id.* ¶¶ 39, 45, 47.) Accordingly, PG Publishing sought to enjoin the GOA from destroying e-mails after five days, to compel it to maintain records on its central server for at least two years, and to direct it to inform all agencies that no e-mails may be destroyed until preserved on the central server. (*Id.* ¶ 71(a)(i)-(3)). It further sought an order enjoining PDE employees from purging their e-mails on a daily basis and compelling the PDE's RTKL Officer to search GOA's archived server with regard to each RTKL request received. (*Id.* ¶ 71(b)(i)-(ii)).

■■ In response, the GOA and PDE filed preliminary objections seeking dismissal of the amended PFR because: (1) PG Publishing lacks capacity to sue insofar as it lacks standing to maintain its mandamus action because it asserts only a generalized grievance shared by the public at large; (2) the RTKL does not establish a record-retention policy for any government entity and, therefore, does not provide a right to relief; (3) PG Publishing failed to assert that any e-mail was not properly preserved pursuant to the GOA's record-retention policy and is not entitled to relief under the Administrative Code; (4) since

PG Publishing has not demonstrated a clear right to relief under the RTKL or the Administrative Code, an action in mandamus cannot lie; and (5) sovereign immunity bars PG Publishing's lawsuit seeking to compel affirmative action by the GOA and PDE.[7]

## II.

■■■■ In adjudicating preliminary objections alleging a lack of capacity to sue, we must consider the petitioner's standing. *Upper Moreland Township v. Department of Transportation,* 48 Pa.Cmwlth. 27, 409 A.2d 118, 119 (1979). Our Supreme Court has explained that the hallmark of standing is that "a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby." *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269, 280 (1975). An individual is aggrieved if he has a "substantial, direct and immediate interest in the outcome of the litigation." *Fumo v. City of Philadelphia,* 601 Pa. 322, 972 A.2d 487, 496 (2009). Further:

> A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it. Yet, if that person is not adversely affected in any way by the matter he seeks to challenge[, he] is not "aggrieved" thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be "aggrieved" to assert the common interest of all citizens in procuring obedience to the law.

*In re Hickson,* 573 Pa. 127, 821 A.2d 1238, 1243 (2003) (internal quotation marks and citation omitted) (alteration in original).

Section 1301(a) of the RTKL authorizes a "requester" to file a petition for review in this Court. 65 P.S. § 67.1301(a). Section 102 defines a "requester" as "[a] person that is a legal resident of the United States and requests a record pursuant to this act. The term includes an agency." 65 P.S. § 67.102. Although the RTKL does not define "person," the term must be interpreted as "includ[ing] a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person." 1 Pa.C.S. § 1991 ("The following words and phrases, when used in any statute finally enacted on or after September 1, 1937, unless the context clearly indicates otherwise, shall have the meanings given to them in this section...."). Because PG Publishing falls within the definition of a "person" under 1 Pa.C.S. § 1991 and otherwise satisfies the definition of a "requester" under Section 1301(a) of the RTKL, 65 P.S. § 67.1301(a), it is within the class of people that has standing to maintain a mandamus action to make the agency produce records that it is required to do so by law.

---

7. In adjudicating preliminary objections, the Court must accept as true all well-pleaded, material, relevant facts and every inference fairly deducible therefrom. *Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 702 A.2d 850, 853 (1997). Preliminary objections should be sustained only when it appears with certainty that the law will not permit recovery, and any doubt should be resolved in favor of overruling the demurrer. *Id.* (citing *Allegheny County v. Commonwealth,* 507 Pa. 360, 490 A.2d 402, 408 (1985)).

In any event, PG Publishing would have standing to bring this action under the principle set forth in *Press–Enterprise, Inc. v. Benton Area School District* that the press has standing to assert the public's right of access to government information. 146 Pa.Cmwlth. 203, 604 A.2d 1221 (1992). In *Benton Area School District,* a newspaper publisher filed suit seeking to invalidate a school board's appointment, alleging that the school board's secret interviews of candidates, secret ballot casting and refusal to advise the press on how each director voted violated the then-current Pennsylvania Sunshine Act of 1986.[8] *Id.* at 1222–23. After determining that Section 15 of the Sunshine Act conferred standing upon the press,[9] this Court went on to conclude that the press also satisfied traditional standing principles:

> The substantial interest of Press–Enterprise in this case stems from the purpose of the Sunshine Act and the press's role in our society. The purpose of the Sunshine Act is to give citizens the opportunity to observe the decision-making process of public agencies. § 2 of the Act, 65 P.S. § 272[, *repealed by* Act of Oct. 15, 1998, P.L. 729]. The role of the press is to disseminate information; if that information is withheld from the press, many concerned citizens who do not attend public meetings would have no way of informing themselves of their government's activities and the purpose

of the statute would be subverted. Thus, the press's interest in this case is different from that of the average citizen because the average citizen does not bear the news media's responsibility of informing the public.

> Thus, even under traditional standing principles as stated in *William Penn Parking,* Press–Enterprise would have standing because of the media's unique role and interest in observing government activity in our democracy.

*Id.* at 1225.

Notably, the Sunshine Act and the RTKL share similar purposes. While the Sunshine Act provided "citizens the opportunity to observe the decision-making process of public agencies," *id.* at 1225 (citing Section 2 of the Sunshine Act of 1986, 65 P.S. § 272, *repealed by* Act of October 15, 1998, P.L. 729), the RTKL seeks to "promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Bowling v. Office of Open Records,* 990 A.2d 813, 824 (Pa.Cmwlth.2010), *aff'd,* 621 Pa. 133, 75 A.3d 453 (2013); *see also SWB Yankees, LLC v. Wintermantel,* 615 Pa. 640, 45 A.3d 1029, 1042 (2012) (noting that the RTKL's purpose is "to empower citizens by affording them access to information concerning the activities of their government").

---

**8.** Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–86, *repealed by* Act of Oct. 15, 1998, P.L. 729. Former Section 285 required public agencies to hold certain meetings and hearings open to the public and is substantially similar to the current Section 705 of the Sunshine Act, Act of October 15, 1998, P.L. 729, 65 Pa.C.S. § 705 ("In all meetings of agencies, the vote of each member who actually votes on any resolution, rule, order, regulation, ordinance or the setting of official policy must be cast and, in the case of roll call votes, recorded.").

**9.** Section 15 of the Sunshine Act of 1986 provided, in pertinent part, "The action may be brought by any person where the agency whose act is complained of is located or where the act complained of occurred." 65 P.S. § 285, *repealed by* Act of October 15, 1998, P.L. 729. Identical language appears in Section 715 of the current Sunshine Act. *See* 65 Pa.C.S. § 715.

Both statutes promote government transparency and provide the means for citizens and the press to obtain information necessary to secure this end. Indeed, while the Sunshine Law required certain Commonwealth agencies to hold their meetings and votes open to the public, the RTKL requires agencies to provide their records to the public. Because the same interest is implicated in this case as was implicated in *Benton Area School District*—namely, the press's "unique role and interest in observing government activity in our democracy" insofar as it is charged with disseminating information to and educating the public—PG Publishing has standing to maintain this action. 604 A.2d at 1225.

### III.

 Next, PDE asserts that PG Publishing has failed to establish a right to relief under the RTKL because agencies have no duty under the RTKL to retain records for any period of time. It points to Section 507 of the RTKL providing that "Nothing in this act shall be construed to modify, rescind or supersede any record retention policy or disposition schedule of an agency established pursuant to law, regulation, policy or other directive." 65 P.S. § 67.507; *see also Paint Township v. Clark*, 109 A.3d 796, 808 (Pa.Cmwlth.2015) (holding that record retention was not modified by and is expressly recognized by the RTKL).

In short, just as Section 705 of the RTKL, 65 P.S. § 67.705, does not require an agency to create a record which does not exist, Section 507, 65 P.S. § 67.507, does not create a duty on the part of agencies to maintain records if they are

destroyed as part of a records-retention policy. Simply, the RTKL governs whether records currently in existence must be disclosed. Because Section 507 of the RTKL provides that nothing in the RTKL affects that policy, PG Publishing has failed to allege facts demonstrating a violation of the RTKL. Therefore, this Count of PG Publishing's PFR must be dismissed.

Nonetheless, if there is no duty under the RTKL, PG Publishing contends in its amended PFR that PDE still must retain the subject e-mails under the Administrative Code. The GOA and PDE further assert that PG Publishing has failed to assert a single instance of failure to adhere to the management directive and accompanying manuals issued by the Governor's Office under Section 701($l$) of the Administrative Code, 71 P.S. § 241($l$). In response, PG Publishing argues that its allegations with regard to Mr. Tomalis demonstrate that PDE is not adhering to the GOA's retention policy or that, at a minimum, the policy provides too much discretion to employees in classifying each record. PG Publishing argues that if a record is improperly disposed of under the disposal schedule, it cannot be recovered and, therefore, employees should not be provided discretion in determining which of the six codes applies to a particular document.

The State Records Management Manual (M 210.7) and related directives provide explicit instruction regarding how to classify documents. As noted above, the guidelines provide express definitions, standards and examples of each classification. Moreover, all Commonwealth employees are to be trained on the policies and how to comply with them.[10] Definitive standards are

10. In this regard, Section 6(g) of Management Directive 210.5 Amended provides that Commonwealth agencies shall:

(1) Be responsible for supporting agency employees in developing and adhering to the agency records management program.

provided, and employees are provided little to no discretion in following those policies. Admittedly, the Manual and related guidelines cannot contemplate each and every type of record an employee could possibly encounter and provide separate retention schedules for each. The minor discretion afforded employees in carrying out the mandates of the Manual and other GOA directives is proper and indeed necessary until the GOA employs executive officials or lawyers to review each and every e-mail an employee proposes deleting pursuant to the retention schedule before it is deleted. Because PG Publishing has failed to aver facts sufficient to demonstrate a violation of Section 701(*l*) of the Administrative Code, 71 P.S. § 241(*l*), its claim is dismissed in this regard.

Moreover, because PG Publishing has failed to establish that it has a clear right to relief under the RTKL or the Administrative Code, it, likewise, has failed to satisfy the legal standard for obtaining a writ of mandamus. *See Clark v. Beard*, 918 A.2d 155, 159 (Pa.Cmwlth.2007) ("[T]he purpose of mandamus is not to establish legal rights, but to enforce those rights which are already established.").[11]

Accordingly, we sustain the GOA and PDE's preliminary objections and dismiss PG Publishing's amended PFR with prejudice.

### ORDER

AND NOW, this *9th* day of *July*, 2015, upon consideration of the Governor's Office of Administration and The Pennsylvania Department of Education's preliminary objections, the amended petition for review in the nature of a complaint in mandamus filed by PG Publishing Company, Inc. d/b/a The Pittsburgh Post–Gazette, is dismissed with prejudice.

---

(a) Delineate record and non-record information within the agency.

(b) Outline program responsibilities.

(c) Oversee management of agency records.

(2) Ensure that employees are trained and comply with requirements, policy and procedures for the State Records Management Program.

(3) Ensure that all electronic records, including electronic messages, are:

(a) Organized and maintained in such a manner as to ensure accessibility over time in order to meet business/legal requirements, technology migration requirements, and user expectations.

(b) Maintained in such a way to preserve the integrity of electronic records, including electronic messages along with attachment(s) in a safe and secure environment.

(c) Retained following an approved commonwealth records retention and disposition schedule; non-records should be deleted immediately and transitory records should be deleted once their short-term business value has ended.

(d) Reviewed regularly to determine retention requirements and compliance with disposal codes.

(e) Appropriately maintained for those records designed by PHMC as having permanent/archival value. This shall include provision for maintenance of such records in human-readable format. The creating agency shall retain the records permanently or until such time as they may be scheduled for transfer to the State Archives.

(Preliminary Objections, Appx. B, at 13–14) (Section 6(g) of Management Directive 210.5 Amended.)

11. The GOA and PDE have also asserted that the action in mandamus is barred by sovereign immunity. However, having found that PG Publishing failed to state a cognizable legal claim under the RTKL or the Administrative Code, we do not reach this issue.