IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Centre County District Attorney's
Office                                    :
                                          :
                                          :
              v.                          :      No. 660 C.D. 2021
                                          :      Submitted: May 6, 2022
Ayyakkannu Manivannan                     :
                                          :
              v.                          :
                                          :
County of Centre                          :
                                          :
Appeal of: Ayyakkannu Manivannan          :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                   FILED: November 18, 2022

          Ayyakkannu Manivannan (Requester) appeals the April 16, 2021 order
of the Court of Common Pleas of Centre County (trial court), which granted in part
and denied in part Requester's objections to the non-production of certain records
by the Centre County District Attorney's Office (D.A.) and the County of Centre
(County) relative to Right-to-Know Law (RTKL)[1] requests filed by Requester.
Upon review, we affirm the order of the trial court.

## I. BACKGROUND

          On April 9, 2019, Requester submitted an RTKL request to the D.A.
seeking "records related to the investigation, prosecution, and sentencing" of

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

Requester (First Request). Off. of Open Recs. (OOR) Final Determination, 7/24/19, at 1. Specifically, Requester sought:

> [A]ll emails, phone calls, messages, conference calls, notes, files, etc., from Centre County (PA) (Ms. Stacy Parks Miller and Ms. Megan McGoron) related to [the Requester]. This includes but is not limited to the following:
>
> 1. All Centre County DA/[Assistant DA (ADA)] phone records (in/out) with DOE/NETL[2] to date.
>
> 2. All written correspondence (including emails) with NETL/DOE (including records of communications between Centre County DA and ADAs with NETL/DOE Attorney Mr. Mark Hunzeker) to date.
>
> 3. Paul Detwiler's communication records delivered by NETL/DOE to Centre County DA (Ms. Megan McGoron).
>
> 4. The certified authorization letter by the DOE/NETL custodian for issuing government documents to Centre County DA (Ms. Megan McGoron).
>
> 5. All records by Centre County DA (Ms. Megan McGoron) related to the 1:30PM Friday, April 15, 2016 conference call with Mr. Mark Hunzeker and Ms. Mary Ann Alvin.
>
> 6. All notes and communications related to the preparation of subpoenas, search warrants (in accordance with law) for federal agency NETL/DOE documents and witness.
>
> 7. The specific email from Ms. Megan McGoron that was attached with the Court subpoena for Mary Ann Alvin (NETL) to appear at Centre County Courthouse on April 18-20, 2016, to testify on behalf of the Commonwealth of Pennsylvania against [Requester].
>
> 8. All records and notes of paper/verbal communications provided by Mr. Mark Hunzeker to Ms. Megan McGoron on the internal investigation testimonies of [Requester], Dr. David Tucker and Mr. Daniel Haynes.

---

[2] "DOE" is the United States Department of Energy. "NETL" is the National Energy Technology Laboratory.

9. All communication records by Ms. Megan McGoron regarding [Requester's] appeal case and appeal law firm with any third party.

10. All communications with Penn State University Police Officer Jessica Myers as mentioned in the Penn State University police reports.

11. All record notes from Ms. Mark Hunzeker's communications with Ms. Megan McGoron and Ms. Crystal Hundt before, during the trial (April 18th & 19th 2016) and to date.

12. Records related to the acquisition of the large head shot photograph of [Requester] in the Facebook page posting by Ms. Stacy Parks Miller. (https://www.facebook.com/stacyparksmiller).

13. All communications and notes between Centre County and the media related to [Requester's] case to date.

14. DA and ADA office records (all forms) in which tentative sentencing of [Requester] was discussed inside and outside the office before sentencing (10th June 2016).

15. Records of any advice given to Centre County Prosecutor by Federal Agency employees regarding [Requester's] case.

*Id.* at 2-3. The D.A. partially denied the request, providing redacted records, and Requester appealed to the OOR.

OOR granted the appeal in part, denied it in part, and dismissed it in part as moot. *Id.* at 1. Regarding the requested phone records and certain email records, which the D.A. had neither produced nor listed in its exemption log, OOR determined that the D.A. had failed to prove that these records did not exist in its possession, custody, or control. *Id.* at 6, 8-9. Thus, OOR directed production of these records. *Id.* In all other respects, OOR agreed with the D.A.'s claims that the requested records were either not in its possession, subject to exemption and

3

redaction, or related to a criminal investigation over which OOR had no jurisdiction. *Id.* at 7, 9-14.

On July 7, 2019, Requester made a second RTKL request (Second Request), which was specifically directed to the County, and sought:

> All [] County DA/ADA (Ms. Stacy Parks Miller and ADA Ms. Megan McGoron phone records (in/out)[)] with Mr. Mark Hunzeker of [DOE/NETL] since 2014 related to [Requester].
>
> DA/ADA [] County landlines especially (telephone number omitted) with [Mr.] Mark Hunzeker (including land line & cell) of DOE/NETL (telephone number omitted) from 2014 to date.

OOR Final Determination, 8/1/19, at 1. The County denied this request on the basis that no responsive records existed, and Requester appealed to OOR. Upon review, OOR granted the appeal on the basis that the County had failed to support its assertion that no responsive records existed within its possession, custody, or control. *Id.*

## II. TRIAL COURT'S REVIEW

The D.A. timely sought review with the trial court and joined the County as an indispensable party. In response, Requester filed a counter-petition to enforce OOR's final determination against the D.A. and a cross-claim in mandamus seeking to compel the County to conduct a search and to produce any responsive records, as had been directed by OOR.

The trial court directed the D.A. and the County to produce any additional responsive documents within 30 days. *See* Trial Ct. Order, 9/11/20. The D.A. and County complied, but following this subsequent production, Requester filed objections alleging that (1) the D.A. failed to search its email servers, (2) the County phone records did not contain incoming phone calls, (3) no cell phone

4

records were produced by either the D.A. or the County, and (4) the D.A.'s submission contained improper redactions. Trial Ct. Op. & Order, 4/19/21, at 1. Following an evidentiary hearing, the trial court further directed the D.A. and the County to provide the trial court with any additional attestations, as well as unredacted emails to review, *in camera*, to determine if the redactions were appropriately made. *Id.* at 3. Thereafter, the trial court entered a decision, reasoning as follows.

In regard to the matter of the email server, the trial court noted that the County presented an attestation from Mr. Michael Crocker, director of the company that maintains the County's electronic records, asserting it was possible that responsive records could be on the County's backup computer equipment (tapes). However, the trial court accepted the D.A.'s and the County's assertion that there has been a records retention policy in place since 2016, which provides for the deletion of any emails not moved into archives after 90 days, that a search of individual employee email boxes and computer archives was conducted, and all responsive records had been provided to Requester. In addition, the trial court accepted Mr. Crocker's aforementioned attestation to the extent it further explained that the backup tapes were created for emergency purposes only and not readily searchable. Further, files on the servers were not readily retrievable, because anything more than 90 days old was stored on tapes, and efforts to restore/recreate the information on the tapes would likely be time consuming, cost nearly $9,700, and would require the purchase of additional equipment. The trial court determined it would be unreasonable and unnecessary to require the D.A. and the County to search the backup server, and, thus, they were not required to do so. *See id.* at 3-6.

5

The trial court further determined that the County was required to produce all responsive landline phone records in its possession, including records of incoming calls from the DOE, with the caveat that the D.A. would first have an opportunity to review the record of calls to determine whether they revealed any information relative to witnesses or victims. *See id.* at 6-7.

In regard to Requester's request for all cell phone records of communications between the D.A. and DOE/NETL, the trial court determined that the D.A. does not have possession, custody, or control over any remaining responsive records, because they are maintained by Verizon, and the D.A. does not have the ability to access them. Because the records requested by Requester were between Verizon and an individual who is no longer employed by, or a contractor with, the D.A. or the County, the trial court decided there was no requirement to provide them to Requester. *See id.* at 7-8.

Finally, the trial court determined that the D.A. was not required to provide unredacted versions of the emails and other documents previously produced. The trial court stated that it had reviewed the redacted portions of those emails, *in camera*, and determined that many of the redactions were related to a criminal investigation and, thus, exempt under the RTKL. Further, the trial court determined that other redactions were protected under the work-product doctrine because the redactions related to theories and strategies for trial, including specific evidence and witnesses. Thus, the trial court determined that the redactions were appropriate and properly made pursuant to the RTKL and that the D.A. did not waive its right to redact same, where it had not redacted other parts of the records that may have also been protected for the same reasons. *See id.* at 9-11.

6

Accordingly, the trial court overruled Requester's objections to production and determined that the records produced by the D.A. and the County were sufficient to satisfy the obligations to Requester in this matter. *Id.* at 11.[3] Requester then timely appealed.[4]

### III. APPEAL

### A. Issues

Requester raises five issues.[5] First, Requester argues that the trial court erred and abused its discretion by relying on affidavits and attestations submitted after it had concluded an evidentiary hearing. Requester's Br. at 4. Second, Requester argues that the trial court erred when it determined that the D.A. and the County were not required to search their email servers to determine whether responsive emails exist. *Id.* Third, Requester asserts that the trial court erred by allowing the D.A. and the County to redact landline phone records that contain phone numbers of victims or witnesses. *Id.* Fourth, Requester asserts the trial court erred by determining that the D.A.'s cell phone records are not in the D.A.'s or the County's possession, custody, or control. *Id.* Finally, Requester contends the trial court erred by allowing certain email communications to be redacted under the attorney work-product doctrine and the criminal investigation exemption of the RTKL. *Id.*

---

[3] As we noted previously, the trial court concluded that the County must provide Requester with the landline records of incoming calls to the D.A. from DOE/NETL after the D.A. has an opportunity to review the records for any witness or victim information.

[4] Our review of the trial court's decision determines whether findings of fact are supported by substantial evidence or whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *In re Right to Know Law Request Served on Venango Cnty.'s Tourism Promotion Agency & Lead Econ. Dev. Agency*, 83 A.3d 1101, 1104 n.3 (Pa. Cmwlth. 2014).

[5] We have reordered the issues for ease of disposition.

The County responds that it made a good faith search of the records in its possession by searching individual employee emails in Outlook, in addition to the D.A.'s server, and that there is no obligation to search emergency backup tapes or to recreate records deleted from a server. Further, the County asserts that the trial court's decision was in accordance with the email search requirements of the RTKL. Next, the County responds that its ability to conduct a landline phone records search is limited to a specific number or exchange, rather than a name or other identifying information, and that it produced all records within its possession, custody, or control. Further, the County reiterates that it has no responsibility to produce the requested cell phone records because those records are not in its possession, custody, or control. *See* Cnty.'s Br. at 9-10.

For its part, the D.A. adopts the argument of the County that it satisfied its obligations relative to email records under the RTKL and that it is not required to conduct an additional search of the server. Second, the D.A. argues that to the extent outstanding landline records may still exist, they may be disclosed only after they are reviewed to ensure they do not contain victim or witness information. As for the requested cell phone records, the D.A. asserts that those are not in its control because they were maintained in the former D.A.'s personal cell phone account, and she personally contracted with Verizon in her own name, rather than in the name of the D.A.'s office. Accordingly, the D.A. maintains that it is does not have any authority over that account or any records associated with it.[6] In regard to the matter of record redactions reviewed by the trial court *in camera*, the D.A. argues that the redactions were appropriate under the criminal investigation and work-product exemptions to

---

[6] The D.A. states that the RTKL does not require it to seek requested records from former employees or officials when the records are not in the possession, custody, or control of the entity. D.A.'s Br. at 7 (citing *Breslin v. Dickinson Twp.*, 68 A.3d 49 (Pa. Cmwlth. 2013)).

the RTKL. Finally, the D.A. argues that the trial court's reliance on attestations at the evidentiary hearing complies with the precedential case law relative to RTKL evidentiary hearings. *See* D.A.'s Br. at 4.

### B. Analysis

We begin our analysis with a review of the applicable legal principles. The RTKL is "designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions[.]" *Bowling v. Off. of Open Recs.*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010), *aff'd*, 75 A.3d 453 (Pa. 2013). Generally, records[7] in the possession of an agency are presumed to be public unless they are privileged or exempt under Section 708 of the RTKL, 65 P.S. § 67.708 (relating to exemptions for public records), and an agency is not required to create a record if it does not exist. This Court has stated that an agency may satisfy its burden of proof that a record is not within its possession with either an unsworn attestation by the individual who searched for the record or a sworn affidavit of the nonexistence of the record. *Moore v. Off. of Open Recs.*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010).

Section 706 of the RTKL states, in pertinent part:

If an agency determines that a public record . . . contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny

---

[7] Section 102 of the RTKL defines a "record" as

[i]nformation, regardless of physical form or characteristic, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a date-processed or image-processed document.

65 P.S. § 67.102.

9

access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record . . . and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted.

65 P.S. § 67.706.

### 1. Post-hearing affidavits

Requester contends that the trial court erred by relying on affidavits that were submitted after the evidentiary hearing in this matter. Requester maintains that such reliance denied him fundamental due process because he did not have an opportunity to cross-examine the affiants "who submitted these inadmissible, out-of-court, post-hearing statements, which were ultimately relied upon to resolve important issues in this proceeding." Requester's Br. at 37. We disagree. As this Court stated in *Sherry v. Radnor Township School District*, 20 A.3d 515, 519-21 (Pa. Cmwlth. 2011):

> [N]either the RTKL nor the courts have extended a right to discovery *or a right to due process* to a requesting party in a RTKL action. While [S]ections 504 and 505 of the Administrative Agency Law, 2 Pa.C.S. §§ 504, 505, provide that a party before an administrative agency is entitled to notice and an opportunity to be heard, including the right to examine and cross-examine witnesses, [S]ection 1309 of the RTKL specifically states that the provisions of the Administrative Agency Law are inapplicable to RTKL proceedings. 65 P.S. § 67.1309. Hence, the provisions of the Administrative Agency Law requiring an evidentiary hearing do not apply. *See also Prison Legal News v. [Off. of Open Recs.]*, 992 A.2d 942 (Pa. Cmwlth. 2010). In *Prison Legal News*, we further held that due process does not require a hearing because the right to information provided by the RTKL does not involve a property

10

right; rather, it is a privilege granted by the General Assembly . . . .

Recently, this Court held that the RTKL does not expressly restrain a reviewing court from supplementing the record through a hearing or remand. We indicated [] that, similar to the OOR appeals officer, a reviewing court has discretion to determine if the record created before OOR is sufficient for purposes of judicial review. Nevertheless, neither the aforementioned sections of the RTKL nor our [previous decision(s)] establish a requester's right to a hearing.

We perceive no error on the part of the trial court in refusing to permit [requester] to depose or cross-examine the affiants.

(some internal citations omitted) (emphasis added). As the D.A. asserts, "[Requester] fails to recognize that there was no burden on the D.A. [] or the County to ever put witnesses on the stand relating to the substance of the attestations and that, regardless of whether the attestations were submitted prior to or after the evidentiary hearing, [Requester] would never have the opportunity to cross-examine attestation witnesses." D.A.'s Br. at 12. Our case law supports this position.

Further, under the RTKL, an affidavit, in and of itself, may serve as sufficient evidentiary support. *See Sherry*, 20 A.3d at 520-21; *Moore* 992 A.2d at 909 ("The Department [of Corrections] searched its records and submitted both sworn and unsworn affidavits that it was not in possession of Moore's judgment of sentence—that such a record does not currently exist. These statements are enough to satisfy the Department's burden of demonstrating the nonexistence of the record in question, and obviously the Department cannot grant access to a record that does not exist."). In the absence of any evidence that the D.A. or the County has acted in bad faith or that the record does, in fact, exist, "the averments in [the affidavit] should be accepted as true." *McGowan v. Dep't of Env't Prot.*, 103 A.3d 374, 382-

11

83 (Pa. Cmwlth. 2014) (citing *Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013)).

Given our prior holdings, the presumption of the validity of the affidavits and attestations submitted in the present matter, and the lack of evidence to support that there was any bad faith on the part of the D.A. or the County, we see no error in the trial court's decision to rely on affidavits and attestations submitted both before and after the evidentiary hearing.

*2. Search of backup servers*

We next address Requester's contention that the trial court erred by not requiring the D.A. and the County to search their servers for responsive records. The sworn attestation that the recovery of any responsive information that might exist on backup tapes would require the re-creation of data and its transfer to different media, simply to be *searched* for responsive information, was enough to satisfy the D.A.'s and the County's obligations under the RTKL, as there is no obligation for an agency to re-create data that no longer exists. As we stated in *PG Publishing Company, Inc. v. Governor's Office of Administration*, 120 A.3d 456, 463 (Pa. Cmwlth. 2015):

> [J]ust as Section 705 of the RTKL, 65 P.S. § 67.705,[8] does not require an agency to create a record which does not exist, Section 507 [of the] RTKL, 65 P.S. § 67.507, does not create a duty on the part of agencies to maintain records if they are destroyed as part of a records-retention policy. Simply, the RTKL governs whether records currently in existence must be disclosed.

---

[8] Section 705 of the RTKL states: "When responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. § 67.705.

In the matter *sub judice*, the County offered the attestation of Mr. Crocker, director of the company that maintains the County's electronic records, who attested:

> 5.) While it is possible that information responsive to the request is contained on backup equipment, the files are not readily retrievable for the following reasons:
>
>> a. The new system employed for the County's electronic system [] was initiated in March[] 2015, but backups beyond 90 days are stored on tape (rather than disk which stores the last remaining 90 days) and therefore require the information to be located on the backup tapes, indexed, *restored and recreated*, then extracted to different media so the same could be searched to locate any records responsive to a request for information.
>>
>> b. Further, tapes may contain data that is problematic – used former email systems – so the *restoration/re[-]creation* may fail and numerous attempts to recreate the same will involve more time and expense.
>
> ****
>
> 9.) Given that records will have to be *recreated* to review them . . . there is no way for the County to know if there are in fact any records that exist . . . .

Cnty.'s Response, 3/9/21, Ex. B (Attestation of Michael W. Crocker) (emphasis added). Although the trial court notably relied on the high cost and the technical difficulty associated with searching for the email records, the more salient point is that this process would require the creation and/or re-creation of records that no longer exist as a result of a legitimate record retention schedule.

Relative to the matter of a record retention policy, we note that the RTKL does not "modify, rescind or supersede" an agency's record retention policy. Section 507 of the RTKL, 65 P.S. § 67.507. Accordingly, the trial court did not err when it determined that the D.A. and the County were not required to conduct a

13

search of its backup system for records that were potentially responsive to Requester's RTKL request.

*3. Information related to criminal victims and witnesses*

We next address Requester's argument that the trial court erred by allowing the D.A. and the County to redact landline phone records to the extent they contained phone numbers of victims or witnesses. *See* Requester's Br. at 26-28. The RTKL specifically allows for such sensitive information to be redacted under Section 708(b)(16), which specifically exempts records of an agency relating to or resulting from a criminal investigation. 65 P.S. § 67.708(b)(16). Section 708(b)(16) of the RTKL states, in pertinent part, that the following are exempt:

> A record of an agency relating to or resulting in a criminal investigation, including:
>
> ****
>
> (iii) A record that includes the identity of a confidential source . . . .
>
> ****
>
> (v) Victim information, including any information that would jeopardize the safety of the victim.
>
> (vi) A record that, if disclosed, would do any of the following:
>
>> (A) Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges.
>>
>> ****
>>
>> (C) Impair the ability to locate a defendant or codefendant.
>> (D) Hinder an agency's ability to secure an arrest, prosecution or conviction.
>> (E) Endanger the life or physical safety of an individual.

14

65 P.S. § 67.708(b)(16). Thus, the statute is plain that such information is exempt from the RTKL's definition of a public record and, thus, may properly be withheld via redaction, per Section 708 of the RTKL, 65 P.S. § 67.708.

### 4. Cell phone records not in D.A.'s possession, custody, or control

Requester next contends that the trial court erred by determining that cell phone records of the former district attorney are not in its possession, custody, or control. The placement of these records in the D.A.'s name does not necessarily exempt them from the definition of public record under the RTKL. However, where, as here, the available records were disclosed and additional records are not obtainable, as confirmed by sworn attestation, we see no error. Matt Metzger, an assistant district attorney in the D.A.'s office, attested to the following:

> 3. Stacy Parks[ ]Miller is not an employee of, nor is she in any contractual relationship with, the [D.A.'s] Office. She has had no such relations with the [D.A.'s] Office since District Attorney Bernard Cantorna took office on January 1, 2018.
>
> 4. To the extent Stacy Parks[ ]Miller maintained an employee Verizon cell phone account in her own name, [] the [D.A.'s] Office does not have access to any usage records from that account, and all retained payment invoices from the account are available on the [D.A.'s] website.
>
> 5. During the transition from Stacy Parks[ ]Miller to DA Cantorna, [D.A.] staff was only able to transfer the existing phone numbers from the Stacy Parks[ ]Miller personal account to the current County account with Stacy Parks[ ]Miller's explicit authorization.

D.A.'s Response, 3/4/21, Ex. A (Attestation of Matt F. Metzger). As this Court noted in *Breslin v. Dickinson Township*, 68 A.3d 49, 54 (Pa. Cmwlth. 2013), "pursuant to Section 901 [of the RTKL] [], when an open records officer receives a request for records, he or she must make a good faith effort to determine whether:

15

(1) the record is a public record; and (2) the record is in the possession, custody, *or control* of the agency . . . . [T]his Court [has] held that a record is in the control or constructive possession of an agency when it is in the possession of one of the agency's officials." (Emphasis in original). Further, "the RTKL does *not require* [] [an Agency] to seek requested documents from former employees or officials, nor does it forbid it." *Id.* at 55 (emphasis added). While the D.A. states that it "in no way condones how the prior administration structured the account for employee cell phone service—as evidenced by the change made by District Attorney Cantorna as soon as he took office—the present administration simply does not have access to the cell phone records of [the former D.A.'s] account beyond those already made public . . . ." D.A.'s Br. at 8. Thus, the trial court did not err when it determined that the D.A. was not required to provide the requested cell phone records to the Requester, per the RTKL.

### 5. Attorney work-product and information re: criminal investigation

Finally, Requester contends that the trial court erred by allowing certain communications to be redacted under the attorney work-product doctrine and the criminal investigation exemption. *See* Requester's Br. at 32-35. Section 305 of the RTKL provides, in part, that the presumption that a record is public applies unless it is protected by a privilege. 65 P.S. § 67.305. Section 102 (Definitions) of the RTKL specifically includes "[t]he attorney[] work[-]product doctrine" in the definition of privilege. 65 P.S. § 67.102. Further, as we addressed above, Section 708(b)(16) of the RTKL, 65 P.S. § 67.708(b)(16), provides for an exemption for records that are part of a criminal investigation. In our view, the criminal investigation exemption clearly applies.[9]

---

[9] Because we conclude that the criminal investigation applies, we need not consider whether the attorney work-product doctrine is also applicable.

16

The responsive records were disclosed and reviewed by the trial court, *in camera*, and the trial court found that "[t]he redactions made by the [D.A.] were appropriate . . . pursuant to 65 P.S. § 67.708(b)(16), which exempts all correspondence related to a criminal prosecution." Trial Ct. Op. at 10. Notably, Requester does not challenge the trial court's finding that the proposed redactions conceal information related to a criminal investigation. *See* Requester's Br. at 32-35; Requester's Reply Br. at 21-22. Requester concedes this finding. Rather, Requester asserts that the criminal investigation exemption should not apply because any criminal investigation into his actions has concluded. According to Requester, the records are not exempt because "by this point in the proceedings, [he] had already been charged," and "systematic inquiry . . . into a potential crime had concluded." Requester's Br. at 33-34.

Plainly, Requester has misconstrued the scope of the criminal investigation exemption. Section 708(b)(16) of the RTKL exempts from disclosure records that would "[r]eveal the institution, progress or result of a criminal investigation." 65 P.S. § 67.708(b)(16)(vi)(A). Thus, the criminal investigation exemption extends beyond any initial or systematic inquiry into whether a crime has occurred and includes records related to the results of a criminal investigation. *Id.* Thus, we conclude that the legal premise of Requester's argument is without merit, and we discern no basis upon which to disturb the trial court's determination.

17

## IV. CONCLUSION

Per the foregoing review and analysis, we see no basis upon which we would disturb the trial court's order, as it was based on substantial evidence and was free from legal error or abuse of discretion.  Accordingly, we affirm.

_____
LORI A. DUMAS, JUDGE

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Centre County District Attorney's  :
Office                              :
                                   :
                                   :
            v.                     :      No. 660 C.D. 2021
                                   :
Ayyakkannu Manivannan              :
                                   :
            v.                     :
                                   :
County of Centre                   :
                                   :
Appeal of: Ayyakkannu Manivannan   :


# **O R D E R**

AND NOW, this 18th day of November, 2022, the April 16, 2021 order of the Court of Common Pleas of Centre County is AFFIRMED.


_____
LORI A. DUMAS, JUDGE