IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David N. Hommrich,                          :
                                            :
                    Petitioner              :
                                            :
            v.                              :  No. 674 M.D. 2016
                                            :  Submitted: April 13, 2017
Commonwealth of Pennsylvania,               :
Pennsylvania Public                         :
Utilities Commission,                       :
                                            :
                    Respondent              :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: July 28, 2017


        Before this Court in our original jurisdiction are the preliminary objections of the Commonwealth of Pennsylvania, Public Utility Commission (PUC) to the "Amended Petition for Review in the Nature of a Complaint for Declaratory and Injunctive Relief" (Amended Petition) filed by David N. Hommrich (Hommrich).[1]

        Hommrich, proceeding *pro se*, filed the Amended Petition challenging certain PUC regulations pertaining to net metering, adopted on November 19, 2016, as unauthorized under the Alternative Energy Portfolio Standards Act (AEPS

_____

[1] We note that the proper designation for the PUC is the "Public Utility Commission," not "Utilities" as designated in Hommrich's Amended Petition and in the caption. *See* 66 Pa. C.S. §301.

Act).[2]  Hommrich seeks declaratory relief under the Declaratory Judgments Act (DJA).[3]  Specifically, Hommrich requests a declaration that:  (I) the challenged regulatory provisions are unenforceable under the AEPS Act; (II) the regulations cannot be retroactively applied to projects that were eligible or approved for net metering prior to promulgation of the regulations; and (III) Hommrich's proposed solar projects qualify for customer-generator status under the AEPS Act and are eligible for net metering.[4]

In support, Hommrich alleged the following, in relevant part. Hommrich is a resident of Pennsylvania and President of Sunrise Energy, LLC (Sunrise Energy), a solar power development company located in Pittsburgh, Pennsylvania.  Hommrich seeks to develop alternative renewable energy assets, specifically photovoltaic power (solar) facilities, for his own use and for the benefit of himself and his heirs.  The planned projects are separate and distinct from any assets owned by Sunrise Energy.  Sunrise Energy will not be involved in the construction or operation of the projects.  Sunrise Energy does not own a financial interest in the proposed projects.  Amended Petition, ¶¶22, 26.

Hommrich intends to build the proposed facilities over the next three years.  Hommrich will personally build and operate the planned solar facilities.

---

[2] Act of November 30, 2004, 73 P.S. §§1648.1-1648.8.

[3] 42 Pa. C.S. §§7531-7541.

[4] Hommrich also sought injunctive relief to prevent the enforcement of the regulations during the pendency of this matter.  He then filed a motion for stay, which this Court dismissed as unauthorized without prejudice to seek preliminary injunctive relief.  Commonwealth Court Order, 1/5/17.  Thereafter, Hommrich filed an application for expedited special relief in the nature of a preliminary injunction, which he later withdrew.  Commonwealth Court Order, 3/16/17.

2

The timeline for construction is one facility per year between 2017 and 2019 for a total of three new facilities. Each system will have a nameplate capacity of 3,000 kilowatts in size. The solar facilities will be on working sheep farms. Some of the power will be used onsite to offset multiple loads including a barn with lights and electrical outlets, an electric water pump to water the livestock, an electric fence to deter predators, and the electricity required by the renewable energy system to operate. Amended Petition, ¶¶23, 25, 27.

Pre-construction activities for the 2017 project include, but are not limited to the procurement of an option to lease property for the project, solar system design, and configuration of the barn and fencing. The proposed projects are within the service territory of Pennsylvania's electric distribution companies (EDCs). Hommrich does not seek to build his facilities in any service territory where net metering is not available pursuant to the AEPS Act. After 2019, Federal Investment Tax Credits (tax credits) begin to expire and future projects will not be economically feasible for him. Amended Petition, ¶¶23-25, 27.

Hommrich plans to fund his projects through a combination of long-term debt and tax-equity investments. The tax credits only become available after a project is "live" and is producing electricity. If a construction project is not live when projected, it creates serious tax repercussions for the investor. Amended Petition, ¶¶68, 70, 72, 76.

The General Assembly authorized the PUC to develop "technical and net metering interconnection rules" under Section 5 of the AEPS Act, 73 P.S. §1648.5. Thereafter, the PUC promulgated regulations, which are the subject of this litigation. Amended Petition, ¶¶5-7.

Hommrich claims that the PUC exceeded its statutory authority and contravened *Sunrise Energy, LLC v. FirstEnergy Corp.*, 148 A.3d 894 (Pa. Cmwlth. 2016), *appeal denied*, __ A.3d __ (Pa. 2017), in which this Court held that the PUC has only narrow statutory authorization to impose "technical and net metering interconnection rules." According to Hommrich, the PUC does not have authority to decide eligibility for net metering, which is established in the AEPS Act. Under the AEPS Act, the General Assembly authorized "customer-generators"[5] to "net meter"[6] and defined both terms.

---

[5] Section 2 of the AEPS Act defines "Customer-generator" as:

> A nonutility owner or operator of a net metered distributed generation system with a nameplate capacity of not greater than 50 kilowatts if installed at a residential service or not larger than 3,000 kilowatts at other customer service locations, except for customers whose systems are above three megawatts and up to five megawatts who make their systems available to operate in parallel with the electric utility during grid emergencies as defined by the regional transmission organization or where a microgrid is in place for the primary or secondary purpose of maintaining critical infrastructure, such as homeland security assignments, emergency services facilities, hospitals, traffic signals, wastewater treatment plants or telecommunications facilities, provided that technical rules for operating generators interconnected with facilities of an electric distribution company, electric cooperative or municipal electric system have been promulgated by the Institute of Electrical and Electronic Engineers and the [PUC].

73 P.S. §1648.2.

[6] Section 2 of the AEPS Act defines "Net metering" as:

> The means of measuring the difference between the electricity supplied by an electric utility and the electricity generated by a customer-generator *when any portion of the electricity generated by the alternative energy generating system is used to offset part or*

**(Footnote continued on next page…)**

4

Hommrich asserts that his proposed projects qualify for net metering under the AEPS Act, but could be disapproved under the PUC's regulations. Amended Petition, ¶¶27-28. Specifically, Hommrich challenges Sections 75.1 (definition of utility and customer-generator),[7] 75.12 (definition of virtual meter

---

**(continued…)**

> *all of the customer-generator's requirements for electricity.* Virtual meter aggregation on properties owned or leased and operated by a customer-generator and located within two miles of the boundaries of the customer-generator's property and within a single electric distribution company's service territory shall be eligible for net metering.

73 P.S. §1648.2 (emphasis added).

[7] Section 75.1 defines "utility" as:

> (i) A business, person or entity whose primary purpose, character or nature is the generation, transmission, distribution or sale of electricity at wholesale or retail.

> (ii) The term excludes building or facility owners or operators that manage the internal distribution system serving the building or facility and that supply electric power and other related power services to occupants of the building or facility.

52 Pa. Code §75.1. It defines "customer-generator" as:

> A retail electric customer that is a nonutility owner or operator of a net metered distributed generation system with a nameplate capacity of not greater than 50 kilowatts if installed at a residential service or not larger than 3,000 kilowatts at other customer service locations, except for customers whose systems are above 3 megawatts and up to 5 megawatts who make their systems available to operate in parallel with the electric utility during grid emergencies as defined by the regional transmission organization or where a microgrid is in place for the primary or secondary purpose of maintaining critical infrastructure, such as homeland

**(Footnote continued on next page…)**

5

aggregation),[8] 75.13(a)(1) and 75.13(a)(5),[9] 75.16,[10] and 75.17[11] of Title 52 of the Pennsylvania Code. The PUC revised the definition of customer-generator to

---

(continued…)

> security assignments, emergency services facilities, hospitals, traffic signals, wastewater treatment plants or telecommunications facilities, provided that technical rules for operating generators interconnected with facilities of an EDC, electric cooperative or municipal electric system have been promulgated by the institute of electrical and electronic engineers and the Commission.

52 Pa. Code §75.1.

[8] Section 75.12 defines "Virtual meter aggregation" as:

> The combination of readings and billing for all meters regardless of rate class on properties owned or leased and operated by a customer-generator by means of the EDC's billing process, rather than through physical rewiring of the customer-generator's property for a physical, single point of contact. Virtual meter aggregation on properties owned or leased and operated by the same customer-generator and located within 2 miles of the boundaries of the customer-generator's property and within a single EDC's service territory shall be eligible for net metering. Service locations to be aggregated must be EDC service location accounts, held by the same individual or legal entity, receiving retail electric service from the same EDC and have measureable electric load independent of the alternative energy system. To be independent of the alternative energy system, the electric load must have a purpose other than to support the operation, maintenance or administration of the alternative energy system.

52 Pa. Code §75.12.

[9] These sections provide:

> (a) EDCs and [default service providers (DSPs)] shall offer net metering to customer-generators that generate electricity on the customer-generator's side of the meter using Tier I or Tier II

**(Footnote continued on next page…)**

6

alternative energy sources, on a first come, first served basis. To qualify for net metering, the customer-generator shall meet the following conditions:

(1) Have electric load, independent of the alternative energy system, behind the meter and point of interconnection of the alternative energy system. To be independent of the alternative energy system, the electric load must have a purpose other than to support the operation, maintenance or administration of the alternative energy system.

\* \* \*

(5) An alternative energy system with a nameplate capacity of 500 kW or more must have Commission approval to net meter in accordance with § 75.17 (relating to process for obtaining Commission approval of customer-generator status).

52 Pa. Code §§75.13(a)(1), (5).

[10] Section 75.16 provides:

(a) This section applies to distributed generation systems with a nameplate capacity above 3 MW and up to 5 MW. The section identifies the standards that distributed generation systems must satisfy to qualify for customer-generator status.

(b) A retail electric customer may qualify its alternative energy system for customer-generator status if it makes its system available to operate in parallel with the grid during grid emergencies by satisfying the following requirements:

(1) The alternative energy system is able to provide the emergency support consistent with the [regional transmission organization (RTO)] tariff or agreement.

(2) The alternative energy system is able to increase and decrease generation delivered to the distribution system in parallel

**(Footnote continued on next page…)**

(continued…)

with the EDC's operation of the distribution system during the grid emergency.

(c) A retail electric customer may qualify its alternative energy system located within a microgrid for customer-generator status if it satisfies the following requirements:

(1) The alternative energy system complies with Institute of Electrical and Electronics Engineers, Inc. (IEEE)] Standard 1547.4.

(2) The customer documents that the alternative energy system exists for the primary or secondary purpose of maintaining critical infrastructure.

52 Pa. Code §75.16.

[11] Section 75.17 establishes the process for obtaining the PUC approval of customer-generator status, providing:

(a) This section establishes the process through which EDCs obtain Commission approval to net meter alternative energy systems with a nameplate capacity of 500 kW or greater.

(b) An EDC shall submit a completed net metering application to the Commission's Bureau of Technical Utility Services with a recommendation on whether the alternative energy system complies with the applicable provisions of this chapter and the EDC's net metering tariff provisions within 20 days of receiving a completed application. The EDC shall serve its recommendation on the applicant.

(c) The net metering applicant has 20 days to submit a response to the EDC's recommendation to reject an application to the Bureau of Technical Utility Services.

(d) The Bureau of Technical Utility Services will review the net metering application, the EDC recommendation and applicant response, and make a determination as to whether the alternative

**(Footnote continued on next page…)**

incorporate the term "retail electric customer" and added a definition for "utility" to make it clear that the definition applies to retail electric customers and not electric utilities, such as EDCs and so-called "merchant generators" that are in the business of providing electric services. The term "merchant generator" does not appear in the AEPS Act or regulations. The PUC does not define the term, but seeks to prevent "merchant generators" from net metering because of concerns regarding alleged ratepayer harm. The PUC created a secondary review for all renewable energy systems that are greater than 500 kilowatts in size. Amended Petition, ¶¶36, 37, 46, 49.

---

**(continued…)**

> energy system complies with this chapter and the EDC's net metering tariff.
>
> (e) The Bureau of Technical Utility Services will approve or disapprove the net metering application within 10 days of an EDC's submission recommending approval. If disapproved, the Bureau of Technical Utility Services will describe in detail the reasons for disapproval. The Bureau of Technical Utility Services will serve its determination on the EDC and the applicant.
>
> (f) The Bureau of Technical Utility Services will approve or disapprove the net metering application within 5 days of an applicant's response to an EDC's recommendation to deny approval, but no more than 30 days after an EDC submits an application with a recommendation to deny approval, whichever is earlier. The Bureau of Technical Utility Services will serve its determination on the EDC and the applicant.
>
> (g) The applicant and the EDC may appeal the determination of the Bureau of Technical Utility Services in accordance with §5.44 (relating to petitions for reconsideration from actions of the staff).

52 Pa. Code §75.17.

Hommrich alleges that the PUC's imposition of new regulatory definitions and a review process creates uncertainty and insecurity with respect to Hommrich's qualifications under the AEPS Act and jeopardize his ability to secure financing for or otherwise proceed with his proposed solar projects. The regulatory threat to net metering rights prevents investors and lenders from even participating in the due diligence phase, which can take three months to complete, and is an expenditure of significant time and resources on behalf of an investor. If a project does not appear to be viable, the investor will not waste its time or resources. So long as the threat of the PUC enforcement of its new regulations looms, Hommrich cannot obtain funding for his personal projects. Hommrich must secure financing before ordering building materials to construct the facilities. Given the anticipated expiration of the tax credits, the time window for building his projects is both well-defined and closing. The tax credits will be phased out after 2019, which means that Hommrich only has three years to capture the full benefit of them. Once the tax credits diminish, so too will the tax equity investment opportunities. If a given year's project is not completed within that calendar year, Hommrich will be unable to make up for the lost construction opportunity in subsequent years. The threat of a protracted appeal process makes the remedy afforded through the administrative approval process inadequate. Amended Petition, ¶¶62-67, 76-79, 81-89. On these grounds, Hommrich seeks declaratory relief to settle and afford relief from uncertainty and insecurity with respect to his status as a customer-generator and his ability to net meter under the AEPS Act.

In response, the PUC filed preliminary objections. First, the PUC asserts that Hommrich's counts are legally insufficient with respect to his

challenge to the PUC's regulations pursuant to Pa. R.C.P. No. 1028(a)(4) because the regulations have no direct and immediate effect on him. Next, the PUC objects because Hommrich fails to join the EDC as a necessary party pursuant to Pa. R.C.P. No. 1028(a)(5). The PUC also asserts that this Court lacks jurisdiction under Pa. R.C.P. No. 1028(a)(1) because Hommrich failed to exhaust available administrative remedies. In addition, the PUC contends the Amended Petition does not conform to law or rule of court pursuant to Pa. R.C.P. No. 1028(a)(2) because his pleadings are factually and legally insufficient to justify pre-enforcement review of the PUC's regulations. In addition, the PUC objects on the basis that Hommrich lacks capacity to sue the PUC under Pa. R.C.P. No. 1028(a)(5) because he has not established how he has been personally aggrieved by the regulations. Finally, the PUC seeks dismissal on the ground that Hommrich's Amended Petition seeks an impermissible advisory opinion. The PUC directed each objection to all three counts of Hommrich's Amended Petition.[12]

---

[12] Thereafter, the PUC filed an application for summary relief seeking to dismiss the action on the basis that Hommrich lacks standing to proceed, which this Court stayed pending disposition of the PUC's preliminary objections. Commonwealth Court Orders, 3/23/17 and 4/11/17.

The PUC also filed a motion to compel discovery. Hommrich responded by filing an application for stay of discovery and an application for *in camera* review of the documents requested in discovery. This Court granted Hommrich's application for stay of discovery pending disposition of the PUC's preliminary objections; denied his application for *in camera* review, without prejudice to refile, if necessary, following the disposition of the preliminary objections; and, denied the PUC's motion to compel discovery, without prejudice to refile, if necessary, following the disposition of the preliminary objections. Commonwealth Court Order, 4/11/17.

Thereafter, Hommrich filed an application for summary relief. The PUC responded by filing an answer and an application to quash on the ground that there are material issues of fact **(Footnote continued on next page…)**

The PUC and Hommrich filed briefs in support of their positions. In addition, Pennsylvania Independent Oil and Gas Association (Amicus) filed an amicus curiae brief in opposition to the PUC's preliminary objections. This Court has directed expedited consideration of the matter. Commonwealth Court Orders, 2/14/17 and 3/23/17.

**PO No. 1 – Rule 1028(a)(4) - Legal Insufficiency of Pleading - Demurrer**

First, the PUC contends that Hommrich's Amended Petition is legally insufficient because the challenged regulations have no direct and immediate effect on him. The PUC maintains that Hommrich's challenge is purely speculative. According to the PUC, Hommrich does not allege any facts that demonstrate an actual case or controversy because he does not provide details regarding the location of his alleged projects, identify the EDCs or investors, or allege a direct or indirect consequence of the PUC's regulations.

"In ruling on preliminary objections, the courts must accept as true all well-pled facts that are material and all inferences reasonably deducible from the facts." *Pennsylvania Independent Oil & Gas Association v. Department of Environmental Protection*, 135 A.3d 1118, 1123 (Pa. Cmwlth. 2015) (*PIOGA*), *affirmed*, __ A.3d __ (Pa. 2017) (quoting *Guarrasi v. Scott*, 25 A.3d 394, 400 n.5 (Pa. Cmwlth. 2011)). "However, we 'are not required to accept as true any unwarranted factual inferences, conclusions of law or expressions of opinion.'" *Id*. (quoting *Guarrasi*, 25 A.3d at 400 n.5). "To sustain preliminary objections, 'it

---

**(continued…)**

related to Hommrich's asserted claims; alternatively, the PUC requested a stay. This Court stayed the application for summary relief and motion to quash pending disposition of the PUC's preliminary objections. Commonwealth Court Order, 7/10/17.

12

must appear with certainty that the law will permit no recovery' and '[a]ny doubt must be resolved in favor of the non-moving party.'" *Id.* (quoting *Guarrasi*, 25 A.3d at 400 n.5).

> Section 7533 of the DJA states:
>
> Any person interested under a deed, will, written contract, or other writings constituting a contract, *or whose rights, status, or other legal relations are affected by a statute*, municipal ordinance, contract, or franchise, *may have determined any question of construction or validity arising under the* instrument, *statute*, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

42 Pa. C.S. §7533 (emphasis added). The DJA was enacted "to curb the courts' tendency to limit the availability of judicial relief to only cases where an actual wrong has been done or is imminent." *Bayada Nurses, Inc. v. Department of Labor and Industry*, 8 A.3d 866, 874 (Pa. 2010). The purpose of the DJA is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" and, accordingly, the DJA should "be liberally construed and administered." 42 Pa. C.S. §7541(a); *accord Office of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014) (citation omitted); *Funk v. Wolf*, 144 A.3d 228, 251 (Pa. Cmwlth. 2016), *affirmed*, 158 A.3d 642 (Pa. 2017).

Notwithstanding, "the availability of declaratory relief is limited by certain justiciability concerns." *Donahue*, 98 A.3d at 1229; *accord Funk*, 144 A.3d at 251. "In order to sustain an action under the [DJA], a plaintiff must allege an interest which is direct, substantial and immediate, and must demonstrate the existence of a real or actual controversy. . . ." *Funk*, 144 A.3d at 251 (quoting *Donahue*, 98 A.3d at 1229); *accord Stilp v. Commonwealth*, 910 A.2d 775, 782

13

(Pa. Cmwlth. 2006), *affirmed*, 974 A.2d 491 (Pa. 2009). "A matter is ripe for judicial review if the issues are adequately developed and a party will suffer hardship by a delay of review." *Sewer Authority of City of Scranton v. Pennsylvania Infrastructure Investment Authority of Commonwealth*, 81 A.3d 1031, 1038 (Pa. Cmwlth. 2013) (citing *Bayada Nurses*, 8 A.3d at 874).

The Courts of this Commonwealth have recognized the justiciability of declaratory judgment actions seeking pre-enforcement review of a substantive challenge to the validity of regulations promulgated by administrative agency. *Donahue*, 98 A.3d at 1230; *Arsenal Coal Company v. Department of Environmental Protection*, 477 A.2d 1333, 1338 (Pa. 1984); *PIOGA*, 135 A.3d at 1125. A pre-enforcement challenge to new regulations is permitted where "the regulation itself causes actual, present harm." *PIOGA*, 135 A.3d at 1126 (quoting *Duquesne Light Company, Inc. v. Department of Environmental Protection*, 724 A.2d 413, 417 (Pa. Cmwlth. 1999)). Whether the harm is "present" is determined by whether the effect of the challenged regulations is "direct and immediate." *Arsenal*, 477 A.2d at 1339. Conversely, where there is no harm done to the litigant until the agency takes some action to apply and enforce its regulations, the normal post-enforcement review process is deemed an adequate remedy. *Id.*

Here, Hommrich alleged specific immediate harm if the challenged regulations remain in effect. Hommrich alleged that his inability to obtain financing for his proposed personal projects is a direct consequence of the PUC's regulations. Amended Petition, ¶¶77, 85. Hommrich needs funding and tax credits to build his proposed solar projects. In order to obtain funding, he must qualify for net metering under the law. Although he maintains that he qualifies under the

14

AEPS Act, he alleged that his facilities could be disapproved under the regulations. Amended Petition, ¶28. He explained that the uncertainty as to whether he qualifies as a customer-generator under the regulations makes his projects too risky for investors and lenders. Moreover, the tax credits are only available until 2019. Without the aid of third-party funding and the benefit of the tax credits, his solar projects are not financially feasible. The window on his opportunity to build his solar projects is closing.

Additionally, Hommrich alleged that he will suffer hardship by the delay of review through an application and appeal process. Even at a brisk pace, the timeline for an appeal before the PUC is indeterminate. Such delay would likely deprive him of the opportunity to build the solar facility in 2017, at the very least. Once the construction window is missed, Hommrich will have lost potential income from that project.

Although Hommrich has not provided detailed information, such as the identity of the banks, investors, insurance companies, or EDCs, he has asserted sufficient information upon which to conclude that the regulations are causing him actual, present harm warranting pre-enforcement review in that he cannot obtain financing to build his new projects because of the threat of regulatory enforcement. Accepting Hommrich's well-pled allegations as true,[13] we believe that the asserted impact of the challenged regulations in this case is sufficiently direct and immediate to render the issue appropriate for judicial review. A DJA action is the appropriate means to settle and afford relief from uncertainty and insecurity with

_____

[13] The fact that the PUC does not believe these allegations is not an appropriate consideration when ruling on preliminary objections as we must accept as true all well-pled allegations as fact. *PIOGA*, 135 A.3d at 1123.

15

respect to the regulations and his putative status as a customer generator. We therefore overrule the PUC's preliminary objection as to Counts I and III.

However, insofar as Hommrich also seeks a declaration that the regulations cannot be retroactively applied to projects that were eligible or approved for net metering prior to the promulgation of the regulations, his claims fall short. Hommrich filed the Amended Petition in his personal capacity, not on behalf of Sunrise Energy. Hommrich has not alleged sufficient facts regarding Sunrise Energy's existing projects. He does not allege that the PUC enforced or intends to enforce its regulations against Sunrise Energy's existing projects retroactively. Significantly, he does not allege how the application of the regulations against these existing projects would cause him present harm to justify bypassing the normal post-enforcement review process. Thus, we sustain the PUC's preliminary objection to Count II of the Amended Petition for legal insufficiency.

**PO No. 2 – Rule 1028(a)(5) – Nonjoinder of a Necessary Party**

Next, the PUC contends that Hommrich's Amended Petition should be dismissed because Hommrich failed to join the EDC as a necessary party. Hommrich asserts that his proposed projects and Sunrise Energy projects will "create excess energy that is sold to [an] EDC." Amended Petition, ¶58. The EDC provides net metering as a service and purchases excess energy at a retail rate. Therefore, the PUC claims the affected EDC has an interest in this matter that is not merely incidental. However, Hommrich does not identify the EDC to which he intends to interconnect and who would be obligated to purchase excess energy he produces. He does not join any EDC as a party.

16

A party is considered indispensable when its rights are "so directly connected with and affected by litigation" that no decree can be made without impairing those rights. *CRY, Inc. v. Mill Service, Inc.*, 640 A.2d 372, 376 (Pa. 1994) (quoting *Scherbick v. Community College of Allegheny County*, 387 A.2d 1301, 1303 (Pa. 1978)). An indispensable party must be made party to protect such rights and a court should not adjudicate a case in the absence of an indispensable party. *Id.* The absence of an indispensable party "renders any order or decree of court null and void for want of jurisdiction." *Id.* (quoting *Scherbick* 387 A.2d at 1303).

We consider the following guidelines in determining whether a party is indispensable:

> (1) Do absent parties have a right or interest related to the claim?
>
> (2) If so, what is the nature of the right or interest?
>
> (3) Is that right or interest essential to the merits of the issue?
>
> (4) Can justice be afforded without violating due process rights of the absent parties?

*CRY, Inc.*, 640 A.2d at 375 (quoting *Mechanicsburg Area School District v. Kline,* 431 A.2d 953, 956 (Pa. 1981)). The basic inquiry is whether justice can be done in the absence of a third party. *Id.* For an accurate analysis, the court must "refer to the nature of the claim and the relief sought." *Id.* at 376.

Here, according to the PUC, the identity and joinder of the EDC is necessary because the challenged regulations would not apply to customers served by rural electric cooperatives and municipal electric systems. However, the PUC's

17

assertion fails to accept as true Hommrich's well-pled allegation that the proposed projects "are within the service territory of Pennsylvania EDCs." Amended Petition, ¶24. Hommrich also alleges that he "does not seek to build his facilities in any service territory where net metering is not available pursuant to the AEPS Act." *Id.* Hommrich seeks a declaration regarding the validity of the PUC's regulations. His challenge is a question of law that is not dependent on the location of his planned projects in a particular EDC service territory or the identity of the EDC to which Hommrich's alternative energy systems would interconnect and to which he would sell his excess energy. Although an EDC is the entity responsible for approving or denying an application for net metering depending if the applicant qualifies under the law, the EDCs do not have a right or interest regarding the validity of the regulations or who qualifies as a customer-generator. The EDCs merely apply the law in effect when ruling on the applications. Thus, we conclude that the EDC is not an indispensable party to this litigation and overrule this objection.

### PO No. 3 - Rule 1028(a)(1) – Lack of Jurisdiction

Next, the PUC contends that this Court lacks jurisdiction because Hommrich has not pled facts demonstrating that he has applied to net meter any solar project. Therefore, none of the regulations he seeks to enjoin the PUC from enforcing have been enforced against him or his projects. The PUC maintains that filing an application to net meter to an EDC is a prerequisite to this action. Only if the EDC denies his application may Hommrich seek review with the PUC under Section 701 of the Public Utility Code, 66 Pa. C.S. §701 or 52 Pa. Code §75.17. Only then may Hommrich file an appeal to this Court. Thus, the PUC claims that

18

this Court lacks subject matter jurisdiction because Hommrich has not exhausted available administrative remedies.[14]

As discussed above, this Court may invoke its original equitable jurisdiction to resolve a pre-enforcement challenge to the validity of regulations promulgated by administrative agency. *Arsenal*, 477 A.2d at 1338. "Administrative agencies are not empowered to make rules and regulations which are violative of or exceed the powers given them by the statutes and the law, but must keep within the bounds of their statutory authority in the promulgation of general rules and orders." *Pennsylvania Association of Life Underwriters v. Department of Insurance*, 371 A.2d 564, 566 (Pa. Cmwlth. 1977), *affirmed*, 393 A.2d 1131 (Pa. 1978). "An agency cannot confer authority upon itself by regulation. Any power exercised by an agency must be conferred by the legislature in express terms." *Sunrise Energy*, 148 A.3d at 907.

Notwithstanding, the courts must refrain from exercising equity jurisdiction when there exists an adequate statutory remedy. *Id*. The doctrine of exhaustion of administrative remedies is intended to prevent the premature interruption of the administrative process, which would restrict the agency's opportunity to develop an adequate factual record, limit the agency in the exercise of its expertise, and impede the development of a cohesive body of law in that area. *Bucks County Services, Inc. v. Philadelphia Parking Authority*, 71 A.3d 379, 388 (Pa. Cmwlth. 2013).

---

[14] We note that the PUC did not specifically object under Pa. R.C.P. No. 1028(a)(7) (failure to exhaust a statutory remedy) or Pa. R.C.P. No. 1028(a)(8) (full, complete and adequate non-statutory remedy at law). Rather, the PUC asserted Pa. R.C.P. No. 1028(a)(1) (lack of jurisdiction) as the sole basis for this objection.

19

However, the exhaustion doctrine is not so inflexible as to bar legal or equitable jurisdiction where the remedy afforded through the administrative or statutory process is inadequate, such as an action challenging the scope of an agency's powers. *Bucks County*, 71 A.3d at 388 (non-medallion taxicab operators seeking declaratory and injunctive relief against Philadelphia Parking Authority alleging taxicab regulations were invalid did not have to exhaust statutory remedy); *see also Hoke v. Elizabethtown Area School District*, 833 A.2d 304 (Pa. Cmwlth. 2003), *appeal denied*, 847 A.2d 59 (Pa. 2004) (student challenging school district's enrollment policy requiring an expulsion hearing did not have to exhaust administrative remedy of having the hearing); *Spooner v. Secretary of Commonwealth*, 539 A.2d 1 (Pa. Cmwlth. 1988), *affirmed*, 574 A.2d 600 (Pa. 1990) (pool owners and swimmers seeking declaration that the Department of Environmental Resources (DER) did not have authority to enforce regulation requiring lifeguards at any public pool licensed by DER did not have to exhaust statutory remedy in the nature of an appeal of an enforcement order). Significantly, in *Bucks County*, we noted that the Philadelphia Parking Authority cannot rule upon the legality of its own regulations or its power to issue them. Similarly, in *Hoke*, the school board could not rule on the legality of the school district's policy, which is what the student sought. In *Spooner*, we noted that it would not be proper for the agency promulgating a regulation to determine whether it had authority to do so. Additionally, the review process is inadequate if the regulation's effects would result in piecemeal litigation or uncertainty in the industry. *Arsenal*, 477 A.2d at 1340.

Here, the General Assembly tasked the PUC "to develop technical and net metering interconnection rules for customer-generators . . . ." Section 5 of the

AEPS Act, 73 P.S. §1648.5. Whether the PUC exceeded this statutory authority is the crux of the Amended Petition.

Hommrich readily admits that he did not apply for and was not denied an interconnection request for his proposed projects. Hommrich's Answer to Preliminary Objections, ¶25. Instead, Hommrich seeks pre-enforcement review of a substantive challenge to the validity of regulations promulgated by the PUC. In this regard, Hommrich alleged sufficient facts in his Amended Petition to establish that pre-enforcement review is appropriate in this case. Hommrich asserts that the PUC exceeded its statutory authority by redefining terms and imposing additional restrictions on net metering violative of the AEPS Act and case law. Hommrich alleged that the imposition of these regulations would have a substantial and immediate impact on his ability to net meter and generate alternate energy under the AEPS Act. In addition, Amicus, a trade association representing oil and natural gas interests in Pennsylvania whose members are impacted by these regulations, advances similar concerns for the need for pre-enforcement review of the regulations for the industry.

We agree with Hommrich that there is no adequate administrative remedy available with regard to Count I of his Amended Petition because the PUC cannot rule upon the legality of its own regulations or its power to issue them. *See Bucks County; Hoke; Spooner.* Absent pre-enforcement review, piecemeal litigation of this issue is inevitable. Conversely, determining whether the PUC's regulations are violative of or exceed the scope of statutory authority would resolve any ongoing uncertainty in the alternative energy industry and promote the goals of the AEPS Act. *See Arsenal.* For these reasons, we overrule the PUC's lack of jurisdiction objection as to Count I of his Amended Petition.

21

However, insofar as Hommrich seeks a declaration from this Court that his proposed solar projects qualify for customer-generator status under the AEPS Act and are eligible for net metering in Count III of his Amended Petition, Hommrich has not exhausted administrative remedies or alleged sufficient facts that the review process is deficient or too time-consuming.

Under the regulations, the EDC is charged with approving or denying net metering applications to enable a generator to interconnect onto its distribution system in accordance with the AEPS Act and regulations. 52 Pa. Code §75.13(a). The EDC must determine whether proposed facilities meet the criteria, which includes criteria beyond whether an applicant is a customer-generator. *See id.* Whether a project qualifies for net metering is fact specific. *See id.*[15] It is for the EDC, not this Court, to determine whether an applicant qualifies for net metering or whether there are any potential deficiencies ancillary to the issue of net metering. *Id.* Hommrich has not provided this Court with sufficient details regarding his proposed projects to even attempt such a determination. Hommrich must file an application with the EDC for his proposed projects to obtain the approval to net meter that he seeks here.

To the extent Hommrich claims this administrative remedy is inadequate because of the length of time involved, Hommrich's claims are speculative at best. Under the challenged regulation, the EDC submits a completed application to the PUC's Bureau of Technical Utility Services (Bureau) with a recommendation on whether the system complies with regulatory provisions for net metering and the EDC's net metering tariff "*within 20 days of receiving the*

---

[15] We note Hommrich only challenges Section 75.13(a)(1) and (a)(5), not the other conditions listed in subsection (a) to qualify for net metering.

22

*completed application.*" 52 Pa. Code §75.17(b) (emphasis added). If the EDC recommends approving an application, the Bureau has 10 days to approve or disapprove the net metering application. 52 Pa. Code §75.17(e). The Bureau must describe in detail the reasons for disapproval. *Id.*

If the EDC recommends rejecting an application, the applicant has 20 days to submit a response to the Bureau. 52 Pa. Code §75.17(c). The Bureau then has 5 days from an applicant's response to approve or disapprove the application, "*but no more than 30 days* after an EDC submits an application with a recommendation to deny approval, whichever is earlier." 52 Pa. Code §75.17(e) (emphasis added). All told, the timeline for approval or denial is relatively short.

Thereafter, both the applicant and the EDC may appeal the Bureau's determination to the PUC within 20 days pursuant to Section 5.44, which relates to petitions for reconsideration from actions of the staff. 52 Pa. Code §§5.44(a), 75.17(g). Although neither the AEPS Act nor the regulations provide a time limit within which the PUC must act on the petition for reconsideration, administrative agencies are entitled to a presumption that they will act in good faith in discharging their duties. *See Donahue*, 98 A.3d at 1239. Failing that, there are other avenues of relief, such as mandamus. But, until he applies, it is unknown whether this administrative remedy is inadequate. Thus, we sustain the PUC's preliminary objection to Count III.

**PO No. 4 - Rule 1028(a)(2) – Pleading Fails to Conform to Law**

Next, the PUC objects on the ground that Hommrich's pleadings are insufficient pursuant to Pa. R.C.P. No. 1019. On this basis, the PUC claims the

Amended Petition fails to conform to law or rule of court pursuant to Pa. R.C.P. No. 1028(a)(2).

"Pennsylvania is a fact-pleading state." *Brimmeier v. Pennsylvania Turnpike Commission*, 147 A.3d 954, 967 (Pa. Cmwlth. 2016), *affirmed*, __ A.3d __ (Pa., No. 104 MAP 2016, filed May 25, 2017) (quoting *Bricklayers of West Pennsylvania Combined Funds, Inc. v. Scott's Development Co.*, 90 A.3d 682, 694 n.14 (Pa. 2014)). Rule 1019 of the Pennsylvania Rules of Civil Procedure governs the contents of pleadings and provides, in relevant part:

> (a) The material facts on which a cause of action or defense is based shall be stated in a concise and summary form.
>
> * * *
>
> (f) Averments of time, place and items of special damage shall be specifically stated.
>
> (g) Any part of a pleading may be incorporated by reference in another part of the same pleading or in another pleading in the same action. A party may incorporate by reference any matter of record in any State or Federal court of record whose records are within the county in which the action is pending, or any matter which is recorded or transcribed verbatim in the office of the prothonotary, clerk of any court of record, recorder of deeds or register of wills of such county.
>
> (h) When any claim or defense is based upon an agreement, the pleading shall state specifically if the agreement is oral or written.
>
> Note: If the agreement is in writing, it must be attached to the pleading. See subdivision (i) of this rule.
>
> (i) When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the

24

material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing.

Pa. R.C.P. No. 1019. For pleadings to suffice, they must: "adequately explain the nature of the claim to the opposing party so as to permit the preparation of a defense," and "be sufficient to convince the court that the averments are not merely subterfuge." *Martin v. Lancaster Battery Co., Inc.*, 606 A.2d 444, 448 (Pa. 1992).

Here, Hommrich alleged that he personally plans to build solar facilities. The projects will be working sheep farms that will not provide distribution services, like an EDC does, or sell power and capacity to end users, like an Electric Generation Supply company does. Amended Petition, ¶27. He described the proposed projects as similar to those built by his company, Sunrise Energy. Amended Petition, ¶58. He alleged that his proposed solar facilities will have a nameplate capacity of 3,000 kilowatts. Amended Petition, ¶27. A portion of the electricity generated by his solar facilities will be used to offset part of the farms' multiple electrical loads, including a barn with lights and outlets, water pump, fence, and electricity required to operate the renewable energy system. Amended Petition, ¶27. The proposed projects will be located within a Pennsylvania EDC's service area. Amended Petition, ¶24.

In addition, he averred the harm that he would suffer of a lost opportunity to construct these projects if the PUC's regulations remain in effect. Specifically, Hommrich alleged that potential investors will not finance his projects because of the regulations and the uncertainty of Hommrich's status as a customer-generator.

The PUC takes issue with the fact that Hommrich did not provide further details regarding the proposed projects, including the location of the projects, the name of the EDC that will serve the location, whether the working sheep farms currently exist or are planned, and the identity of the electrical service provider. The PUC also points out that Hommrich has not attached plans for the projects or any lease agreements. The PUC maintains that without this information, it is impossible for it to determine whether the projects exist as described and whether the PUC's regulations would actually affect Hommrich. The PUC contends it will be incapable of investigating or defending against Hommrich's claims without this information.

The additional details the PUC seeks are not critical for ruling on the remaining count challenging the validity of the regulations. For purposes of this stage of the proceeding, Hommrich has sufficiently alleged his plan to build the proposed solar facilities and how his plans are affected by the PUC's regulations. Upon review, Hommrich has sufficiently pled facts to state his case and survive this objection. Thus, we overrule this preliminary objection.

**PO No. 5 – Rule 1028(a)(5) – Lacks Capacity to Sue**

Next, the PUC objects on the basis that Hommrich lacks capacity to sue the PUC because he did not establish how he has been personally aggrieved by the PUC's regulations from which he seeks declaratory judgment. According to the PUC, the regulations do not directly and immediately affect Hommrich. The PUC contends that it can be reasonably inferred that Hommrich is not personally contracting in the solar power facilities because he is the President of Sunrise Energy. The PUC maintains this allegation "is dubious in light of the fact that []

26

Hommrich admits he has sought the legal benefits of a limited liability company for his solar power developing venture, Sunrise Energy." Respondent's Brief at 38. The PUC advances that "this Court is not required to believe that he now wants to put his personal assets at risk doing the same activities he created Sunrise Energy to perform." *Id.*

In adjudicating preliminary objections alleging a lack of capacity to sue, we must consider the party's standing. *PG Publishing Co., Inc. v. Governor's Office of Administration*, 120 A.3d 456, 461 (Pa. Cmwlth. 2015), *affirmed*, 135 A.3d 578 (Pa. 2016). Our Supreme Court has explained that the hallmark of standing is that "a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby." *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975). An individual is aggrieved if he has a "substantial, direct and immediate interest in the outcome of the litigation." *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009).

Our Supreme Court recently addressed standing in declaratory judgment actions in *Donahue*, 98 A.3d at 1229, explaining:

> In Pennsylvania, the doctrine of standing . . . is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter. *In re Hickson*, . . . 821 A.2d 1238, 1243 ([Pa.] 2003). For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been "aggrieved." *Pittsburgh Palisades Park, LLC v. Commonwealth*, . . . 888 A.2d 655, 659 ( [Pa.] 2005). As this Court explained in *William Penn Parking Garage*, "the core concept [of standing] is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution to his challenge." 346 A.2d at 280-81. A party is aggrieved for purposes of

27

establishing standing when the party has a "substantial, direct and immediate interest" in the outcome of litigation. *Johnson [v. American Standard*, 8 A.3d 318, 329 (Pa. 2010)] (quoting *Fumo*[, 972 A.2d at 496]). A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative. *Id.*

Here, although Hommrich identifies himself as the President of Sunrise Energy, he clearly sets forth that he is pursuing the proposed projects in his individual capacity for *his personal use*, not in a corporate capacity. Simply because Hommrich shared with this Court his corporate status and prior experience in solar development does not negate his well-pled allegations that the proposed projects are personal and independent of the corporation. Hommrich alleged that he will "personally operate and maintain" the project. Amended Petition, ¶23. "The planned projects are separate and distinct from any assets owned by Sunrise [Energy]." Amended Petition, ¶22. "Sunrise Energy will not be involved in the construction or operation of the projects, nor does Sunrise [Energy] own a financial interest in them." Amended Petition, ¶26. For purposes of ruling on preliminary objections, we accept as true all well-pled allegations and all reasonable inferences deducible therefrom. *PIOGA*, 135 A.3d at 1123. The fact that the PUC finds Hommrich's allegations "dubious" is of no moment at this stage of the proceeding. *See id.*

Although Hommrich has not yet filed an interconnection application with an EDC and the PUC has not enforced the regulations against him, Hommrich claims he is aggrieved by the regulations because they are impeding his ability to obtain necessary funding for his projects. He is seeking pre-enforcement review to

28

establish that he is qualified to net meter as a customer-generator under the AEPS Act. As a putative customer-generator, his interest in challenging the regulations surpasses that of other citizens procuring obedience to the law. *See Donahue*, 98 A.3d at 1229. Upon review, Hommrich has sufficiently alleged an interest in challenging the regulations, which is direct, substantial and immediate, and has shown the existence of a real or actual controversy that he has an interest in the outcome of the litigation. Thus, we overrule the PUC's preliminary objection challenging his capacity to sue.

## PO No. 6 - Advisory Opinion

Lastly, the PUC contends Hommrich's Amended Petition must be dismissed because it seeks an advisory opinion based on a purely hypothetical situation. The PUC asserts that Hommrich failed to plead facts demonstrating that the PUC enforced its regulations against his projects. He has not pled facts showing that he personally has an existing renewable energy system that was approved by the PUC as eligible for net metering prior to the promulgation of the regulations. He has not pled that his proposed projects will otherwise meet the statutory requirements for customer-generator and net metering status under the AEPS Act.

As discussed above, in order to sustain a declaratory judgment action, a plaintiff must demonstrate the existence of a real or actual controversy, "as the courts of this Commonwealth are generally proscribed from rendering decisions in the abstract or issuing purely advisory opinions." *Funk*, 144 A.3d at 251 (quoting *Donahue*, 98 A.3d at 1229). "[D]eclaratory judgment must not be employed . . . as a medium for the rendition of an advisory opinion which may prove to be purely academic." *Id*. at 251 (quoting *Gulnac by Gulnac v. South Butler County School*

29

*District,* 587 A.2d 699, 701 (Pa. 1991)). "Courts generally should refuse to grant requests for declaratory judgment where it would not resolve the controversy or uncertainty which spurred the request." *Id.* (quoting *Rendell v. Pennsylvania State Ethics Commission*, 938 A.2d 554, 559 (Pa. Cmwlth. 2007)).

Although Hommrich's proposed projects have not been reviewed or denied under challenged regulations, the remaining issue is whether Hommrich may seek pre-enforcement review of a substantive challenge to the validity of the PUC's regulations. Hommrich alleged that the regulations are causing actual and present harm in that they are thwarting his ability to finance his proposed solar facilities. Under the facts and harm alleged, we believe Hommrich is entitled to seek pre-enforcement relief. *See PIOGA.* We overrule this objection.

In conclusion, we overrule the PUC's multiple preliminary objections to Count I. We sustain the PUC's objection to Count II on the basis of legal insufficiency and its objection to Count III for lack of jurisdiction.

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David N. Hommrich,          :
                              :
             Petitioner     :
                              :
            v.              : No. 674 M.D. 2016
                              :
Commonwealth of Pennsylvania, :
Pennsylvania Public         :
Utilities Commission,        :
                              :
            Respondent   :

# **O R D E R**

AND NOW, this 28th day of July, 2017, the Pennsylvania Public Utility Commission's (PUC) preliminary objections to Count I of Petitioner's Amended Petition for Review in the Nature of a Complaint for Declaratory and Injunctive Relief (Amended Petition) are OVERRULED; the preliminary objections to Counts II and III of the Amended Petition are SUSTAINED. PUC is hereby directed to file an answer to the Amended Petition within thirty (30) days of this order.

_____
MICHAEL H. WOJCIK, Judge